## Case No. 12,933.
### SLACOM v. WISHART.
[3 McLean, 517.] [1]

Circuit Court, D. Ohio. Dec. Term, 1844.

NOTES — FRAUD — BONA FIDE ASSIGNEE WITHOUT NOTICE.

1. Fraud may be set up as a defence by the maker against the payee of a note.

2. The same defence may be made against an assignee who had notice of the fraud before the assignment. Or it may be set up by an assignee after the note was due, or if assigned without consideration.

3. But against a bona fide assignee, for a valuable consideration, before the note was due, such a defence cannot be made.

At law.

Mr. Starr, for plaintiff.
Spalding & Chase, for defendant.

LEAVITT, District Judge. This suit was brought by the plaintiff as the indorsee of two promissory notes, each for the sum of $666.66, dated the 23d of August, 1838, drawn by the defendant, payable to the order of Joseph H. Benham, at the Franklin Bank of Cincinnati; one, due in twelve—the other, in eighteen months from date. The defendant set up, as a defence to the action, that these notes were obtained by fraud, and without consideration; and that they were transferred to the plaintiff after maturity, and, therefore, in a suit in his name, are subject to the same exceptions, and open to the same defence, as if sued in the name of the payee.

The material facts proved were as follows: In the early part of August, 1838, Benham, the payee of the notes, then being the editor and publisher of a newspaper at Cincinnati, called the Kentucky and Ohio Journal, wrote to the defendant, residing at St. Clairsville, in this state, expressing his desire to sell the paper, and advising the defendant to purchase it, for his son, a printer. In this letter, Benham gave a very favorable account of the condition and prospects of the paper, representing, among other things, that there were then about fourteen hundred paying subscribers in the county, besides several hundred in the city; and, assuring him, that five hundred subscribers could be at once obtained, in the city, to a daily paper; and, that the concern could be made worth eight or ten thousand dollars per annum. Soon after the receipt of this letter, the defendant visited Cincinnati; and, after examining the office-book, subscription list, &c., purchased one half of the paper, at two thousand dollars, and executed the two notes above described, together with another, not now in controversy. The notes were drawn in the usual form of joint and several notes, commencing, we or either of us promise, &c.; and it was the intention of the parties that the name of the defendant's son should be added, but they were never exe-

cuted by him. It is proved, by Mr. Fisher, a witness for the defendant, that, a few days after the above sale, he purchased from Benham the other half of the concern, at one thousand dollars. This witness states, that he was induced to make this purchase by the flattering representations of Benham as to the patronage and prospects of the paper; that he soon became satisfied these representations were false and deceptive; that, in fact, the entire subscription list, including exchanges, did not exceed twelve hundred names; that the paper was unpopular, and subscribers were constantly ordering discontinuances, while many, to whom the papers were sent, refused to take them from the post-offices. This witness gives it as his opinion, that the whole number of paying subscribers did not exceed four hundred; that to one acquainted with the true condition of the paper, it could not have been sold for five hundred dollars; and that its patronage did not justify the continuance of its publication. He published it for a few weeks, when it was discontinued, and united with and merged in another paper. He also states, that it was impossible, at the time of the defendant's purchase, by any investigation, to ascertain the real state of the paper. The witness also states, that neither the defendant, or his son, took possession of the concern, or in any way exercised any acts of ownership or control over it; and that the contract for its purchase was abandoned a few days after the date of the notes.

To repel the inference of fraud, from the foregoing facts, the plaintiff introduced Mr. Flinn as a witness, who testified that, at the time of the sale to the defendant, he was in the employment of Benham, as a clerk in the newspaper office; that he gave the defendant all the aid in his power, in examining the books and subscription list; that Benham was not a practical printer, and referred the defendant to persons employed in the office for information concerning the paper. This witness also says, he considered the subscription list a good one; but that, in his opinion, Benham had lost money by the publication of the paper. It appears that Benham died in the summer of 1839. It is in proof, that the plaintiff is the brother of Mrs. Benham, and is now, and has been for eight or ten years, the consul of the United States, at Rio Janeiro. There is no evidence that he has been in the United States since the date of the notes; or that he ever saw the notes, or paid any consideration for them. It does not appear from the evidence at what time they were indorsed by Benham. Doctor Lukin, whose deposition has been read, says, that in the year 1839, and shortly prior to Benham's death, he had some conversation with him in relation to these notes. This was after one of the notes had become due.

Upon the law applicable to the case, THE COURT charged the jury as follows:

It is a well settled principle, that in a suit

by the payee against the maker of a promissory note, the latter may set up, as a legal ground for refusing payment, that it had its inception in fraud; or, that there has been a total failure of the consideration for which the note was given. It is equally well settled, that where a negotiable note is indorsed, before it become due, either in payment of a pre-existing debt, or for a good consideration paid, without notice of any fraud in its origin or execution, the indorsee is regarded as an innocent holder; and, as against him, the maker cannot set up fraud, as a defence. This doctrine has been long established by the adjudication of the courts in this country and in England, and is based upon the hypothesis, that the interests of a commercial community require that every possible facility should be afforded to the free and unobstructed circulation of negotiable paper. But, if a note is negotiated after maturity, the indorsee receives it subject to all the rights and equities existing between the payee and the maker, before the indorsement. The fact that the note is overdue, and thus dishonored by non payment, is sufficient to put the indorsee on his guard; and if he takes it, he does so at his peril. He occupies the same position as the payee; and any defence that the maker could assert as against the payee, may be set up against the indorsee.

The first important inquiry arising in this case is, whether a fraud was practised upon the defendant by Benham, in the sale of the newspaper to the defendant. It is insisted by the counsel for the defendant, that Benham's letter, in connection with the testimony of the witness Fisher, clearly establishes the fraudulent conduct of Benham in this transaction. On this point, it will be sufficient to remark, that if the evidence satisfies the jury there was a wilful suppression, or a false statement, of any material facts, in reference to the actual condition or future prospects of the printing establishment, calculated to mislead and deceive the defendant, and which influenced his mind in making the purchase and giving the notes in question, Benham was guilty of a fraud. It is contended on the part of the plaintiff, that the testimony of the witness Flinn repels the presumption of any fraudulent design on the part of Benham, and shows that the defendant did not only rely on the statements and representations contained in Benham's letter, but, after a personal examination of the office, and from information derived from other sources, entered into the contract, and executed the notes. Applying the law, as stated by the court, it will be for the jury to decide, whether the imputation of fraud rests upon the conduct of Benham.

If the jury shall be led to the conclusion, that the evidence merely establishes the fact, that, in agreeing to pay two thousand dollars for an interest of one half in the newspaper, the defendant unwisely and inconsiderately gave his assent to a hard bargain, this will not be sufficient to impeach these notes. That the owner of property has insisted upon, and the buyer has agreed to give, an exorbitant price for it, will not, in the absence of fraud or unfair dealing, vitiate the contract. It is true, an entire failure of the consideration for which a note is given, is a legal bar to a recovery upon it; but a failure in part only of the consideration, will not protect the maker from liability. If the jury shall believe the transaction to be infected with fraud, another important inquiry will present itself for their consideration, namely, were these notes indorsed to the plaintiff, in the usual course of business, and before they arrived at maturity? If thus indorsed, in accordance with the law already stated, the plaintiff is an innocent holder, and is not chargeable with the consequences of any fraud attaching to them in their inception.

The absence of the plaintiff from the United States, and the want of testimony on his part, proving any business transactions between him and Benham, are urged by the counsel for the defendant, as sustaining the presumption that the notes were not transferred in the usual course of business. And the testimony of Dr. Lukin, it is insisted, is sufficient to conduct the jury to the conclusion, that the notes were over due when indorsed by Benham; at least, that they were in his possession and under his control, till after they arrived at maturity. If the jury shall think this conclusion warranted by the evidence, they may properly presume the plaintiff received the notes on the credit of the indorser; and if so, he stands in the situation of the payee. And any defence which could be set up in an action against the payee is available in a suit by the indorsee.

The jury returned a verdict for the defendant.