## BARNEY v. EARLE, ET AL.

1. The chancellor may entertain a motion to dissolve an injunction, notwithstanding exceptions have been filed to the answer, which are not disposed of. But the defendant should have the benefit of all exceptions well taken, and the case should be considered as if they were sustained.

2. One who receives a bill, or negotiable note, before its maturity, in payment of a debt, is a *bona fide holder*, and is not affected by any force, or fraud in obtaining the bill, of which he had no notice.

3. Impertinent matter, which if stricken out would not affect the merits of the case, cannot be considered upon the inquiry, whether the chancellor properly dissolved the injunction.

Appeal from Marengo Chancery Court. Before the Hon. A. Crenshaw, Chancellor.

Barney v. Earle, et al.

THE plaintiff in error filed his bill in the chancery court holden in the county of Marengo, against Joseph B. Earle, individually, and as executor of James W. Earle, deceased, also against Robert J. Ware, James Battle, John Battle and Samuel, merchants and partners, under the firm name of Rives, Battle & Co. ; which bill, among other things, charges that on the 28th March, 1837, complainant formed a partnership with defendant (Earle,) by which it was agreed to carry on a farm upon joint account, in the county of Marengo, for 3 years ; the complainant putting into the concern as stock, 58 negro slaves, estimated by the parties at $52,000, and the said defendant (Earle) furnishing lands, described in a statement made at the time by said Earle, which is exhibited to the bill, and which were valued by the agreement of the parties at $58,000. Each conveyed to the other, in the capital so put in, one moiety, and Barney executed to Earle his promissory note for the difference in the capital so advanced, being $6,000. That complainant then resided in North Carolina, and after having completed the above arrangement, he returned home, leaving the slaves and farm under the control and management of the defendant, Earle. That Earle cultivated the farm in the years of 1837 and 1838, and when called on to account at the end of the latter year, reported that the expenses were equivalent to the profits of the farm. That complainant, fearing a loss from the arrangement, proposed a dissolution of the partnership, which Earle assented to, upon condition that he should retain the hands for the year 1839, and the parties mutually executed reconveyances, vesting the interest in the property as it originally stood. This done, complainant instructed his agent in Mobile to sell his said slaves on a credit of ten years, with interest from date, securing the purchase money by mortgage on the slaves and real estate. That the agent sold them to said Earle, and took a mortgage on the slaves, and the land formerly placed into the partnership by Earle. That Earle removed a portion of his own property to Texas, which excited complainant's alarm for the safety of his debt, and after various proposals on the part of Earle to sell out his equity of redemption to complainant, it was finally agreed, in the winter of 1841-2,

that the land should be sold under a decree of foreclosure, and that complainant should purchase it at said sale, and should execute his notes to Earle for the sum of $22,000, payable in instalments of two, four, six and eight years. The complainant under this arrangement, obtained possession of the slaves, and executed his notes, which he left in the hands of his agent in Mobile, to be delivered over to Earle, after the sale under the decree, but being informed that there were judgments against Earle older than the mortgage, and for other reasons which the bill does not disclose, he withdrew from the agent his notes, and refused a compliance with the contract. It appears that Earle paid complainant at the end of the year 1839 the sum of $4,000, and in the latter part of 1840, he paid him the sum of $5,250, upon the demand so secured by mortgage. This sum, with six or eight mules, is charged to be all that complainant has received from said Earle. The bill further charges, that after many importunities on the part of Earle, to induce complainant to purchase his equity of redemption in said lands, which importuning was accompanied by false and fraudulent representations as to its quality and value—complainant, relying upon such representations, agreed to purchase said equity of redemption. That this agreement was forced from him by fears of the loss of his life from personal violence, which he was informed by a friend, who came to him to have the matter settled, the said Earle had threatened to inflict, if complainant should refuse to conclude such purchase. Induced by such considerations, the bill charges, complainant agreed to give $15,000 for the equity of redemption, payble in three annual instalments, and executed his notes to divers persons for this sum ; one of the notes, amounting to $5,000, was made payable to James W. Earle, the son of the defendant, Joseph B. That said James W. indorsed it in blank, and it was delivered to Robert J. Ware, of Montgomery, as collateral security for a pre-existing debt, who indorsed the same to Rives, Battle & Co. as collateral also. The note is payable and negotiable at bank, and was passed off before due. This note was put in suit in the circuit court of Marengo county, in the name of Battle & Co., and to enjoin which suit the bill in part is filed. Complainant charges the note is without consideration, and that

Barney v. Earle, et al.

Ware and Rives, Battle & Co. were fully apprised, before the note was passed to them, of all the circumstances under which it had been obtained.

That since complainant had purchased said equity of redemption, Earle had pointed out a portion of the land to be sold under execution, and to protect his title, complainant had been compelled to purchase it in at the sum of $1,000. That said Earle, on the sale of the equity of redemption, executed to complainant a deed with warranty as to title. That he has paid all of the $15,000, except the $5,000 now in suit.

Complainant offers to cancel this last arrangement, and to convey the slaves and land to Earle upon his paying the sum of $50,000, which he had agreed to pay, and for which he executed the mortgage, and refunding the $10,000 paid by complainant under the last purchase, complainant accounting for the hire of slaves, &c.

The circuit judge made a *fiat* granting the injunction.

All the defendants answer the bill; the answer of the firm of Rives, Battle & Co. is sworn to by one member only. Various exceptions are filed to the respective answers, and pending the exceptions, the defendants moved the chancellor in vacation to dissolve the injunction. This motion was granted by the chancellor, from which interlocutory decree, under the statute of this State, the complainant has appealed to this court. The matter of the exceptions and answers will sufficiently appear in the opinion.

. Byrd, for plaintiff in error, made the following points:

1. The answer does not deny the equities of the bill. 3 Ala. R. 448; 2 Story, 243.

2. The chancellor erred in passing upon the exceptions in vacation. Clay's Dig. 354, § 55, 358, § 82.

3. The chancellor erred in dissolving the injunction before the exceptions were passed upon by the register. Clay's Dig. 354, § 55.

4. The exceptions were well taken, and the chancellor erred in overruling them. Mitford, 315.

5. The chancellor erred in dissolving the injunction on

the answer of Ware, and Rives, Battle & Co., the exceptions to the answer of Earle being well taken.

F. S. LYON, contra.

The complainant excepted below to the answer of Rives, Battle & Co. 1. Upon the ground that the same was not signed by a solicitor of the court, but was signed by one of the respondents.

2. That the answer of Rives, Battle & Co. was not sworn to by all the members of the firm, but by one only, and excepted to the answer of Ware upon the ground that it contained scandalous and impertinent matter, and excepted to the answer of Earle for the reasons stated in the record.

As to the first exception to the answer of Rives, Battle & Co., by the 29th section of the declaration of rights, every person has the right to prosecute or defend a civil cause by himself or counsel. The answer was signed by one of the firm, a party in interest, and was therefore sufficient.

As to the second objection to the answer of Rives, Battle & Co., the bill does not seek a discovery from each member of the firm, but charges that the note in controversy was negotiated to Rives, Battle & Co. without consideration, and with a knowledge that it was obtained by fraud and duress. The answer of the firm is therefore joint, and was sworn to by one of its members, and was sufficient. See Reynolds v. Dothard, 11 Ala. R. 531.

The objection to the answer of Ware is not sustained by the record. The exceptions to the answer of Earle were immaterial, if the answers of Rives, Battle & Co. and of Ware were sufficient to dissolve the injunction. They deny every material allegation in the bill, and show complainant's promise to them to pay the note in question after its transfer. See answers.

An injunction may be dissolved upon the answer of such defendants as may have a knowledg of the facts charged in a bill, although there are other defendants who have not answered. Dunlap v. Clements, et al. 7 Ala. R. 539.

The note in controversy was upon its face negotiable and payable at bank, and was transferred to respondents before its maturity, and in the course of trade for a valuable considera-

tion, and hence the defence alledged in the bill was not available as against the holders. See Emanuel v. Atwood, 6 Porter, 384.

If the equity of a bill is denied by the answer, exceptions for impertinence will not prevent a dissolution. 1 Barbour's Ch. Pr. 642.

CHILTON, J.—The questions which are presented for our consideration are—

1. Can the Chancellor entertain a motion to dissolve the injunction upon the coming in of the answers, if exceptions to such answers put in issue their sufficiency, and which are undisposed of?

By the act of 1841, (Clay's Dig. 354, § 55,) it is provided, that "exceptions to bills, answers, and reports, shall be heard and determined by the register, in the first instance, but subject to an appeal to the chancellor." By a subsequent act, passed in 1843, the chancellors have power, within their respective divisions, to hear applications in vacation, for the dissolution of injunctions, to be made after answer filed, upon ten days notice to the opposite party. Clay's Dig. 358, § 82. Before the passage of the latter act, the registers; whose duty it was to hear and determine exceptions to answers, &c., had likewise the power to dissolve injunctions, but by the first section of this act, the power to grant and dissolve injunctions, is taken away from the registers, and the chancellors invested with the power to dissolve in the same manner as if the applicition had been made in court.

We feel warranted in saying, that a correct interpretation of these statutes does not deny to the chancellor the power to hear a motion to dissolve, notwithstanding exceptions may have been filed to the answers. He is not in the first instance to hear the exceptions, but whether exceptions are filed or not, he is, upon such motion, equally bound to look into the answers, and to determine whether they deny the equities of the bill. If they do, he is bound, regardless of the exceptions, to dissolve. The statute conferring upon the register the power to hear exceptions, was intended merely for the relief of the court, which too frequently was embarrassed by the consideration of collateral matters involv-

ing an examination of the file, and with which the register was supposed to be conversant. It does not restrict the pow-er of the chancellor over the injunction. It is however pro-per in such cases, to give the defendant the benefit of all ex-ceptions well taken to the answer, and to consider it as though they had been sustained. If, allowing the exceptions, the answers still deny all the equity of complainant's bill, the in-junction should be dissolved; and in cases where a discove-ry is sought, which defendants fail to make, and which if made in conformity with the allegations of the bill, would influence the court in its action upon the injunction, the court should, for the purposes of the motion, regard such al-legations as confessed. But in no event could the penden-cy of exceptions oppose an objection to dissolving the in-junction, unless they affect the answer in points relating to the ground of the injunction, and if the exceptions are frivo-lous, they will furnish no objection to a motion to dissolve. See 1 Barb. Ch. Pr. 642; Hop. Ch. Rep. 276; Ross v. Smith, cited 1 Hoff. Pr. 357, n. 1.

The note upon which the suit at law has been instituted, being payable and negotiable in bank, is placed by our sta-tute upon a footing with bills of exchange. The defendant, Ware, in answer to the direct allegation of the bill, which avers he acquired it as collateral security for a pre-existing debt, avers that he acquired it long before it was due, in the reg-ular course of trade, and for a valuable consideration, viz : in payment of a debt due from J. B. Earle to him. He also states that Rives, Battle & Co. have no interest in the note, but are merely his agents to collect the same. He further denies all notice of any fraud or force, by threats or otherwise, in ob-taining the note. Besides, he appends to his answer a copy of a letter written by the plaintiff in error to him, dated 28th December, 1845, by which he fully acknowledged the just-ness of the demand, and asked indulgence until he could raise funds out of the sale of his cotton, to adjust it. Hav-ing received the bill, or note, in payment of a debt, Ware is to be regarded a *bona fide* holder without notice, and the in-quiry, in this aspect of the case, so far as concerns him, whether the bill was obtained by fraud or force from Barney, the plaintiff, is wholly immaterial—he is bound to pay it to

the *bona fide* holder. 2 Kent's Com. 79, 80; Story on Bills, § 188, 192, and authorities there cited. Allowing therefore all that the complainant states in his bill' as against Earle, to be admitted, it can have no effect as against Ware, and it follows that the exceptions filed to Earles answer cannot prejudice Ware's right to dissolve the injunction. The answer of James W. M. Battle, for the firm of Rives, Battle & Co. is in effect but a disclaimer of all interest in the note and subject matter of the suit, which may as well be made by one as by all the partners. Reynolds v. Dothard, 11 Ala. R. 531.

There are but two exceptions filed to the answer of Ware, one is for impertinence in this, that he answers, "if complainant had been defrauded by Joseph B. Earle, in obtaining the note, he ought to have discovered the same between the 25th Earch, 1842, the date of his note, and the 28th December, 1845, the date of his letter promising to pay the same to this defendant, and if he was in duress at the time of the date of said note, his fears must have been greatly excited, to have continued from March, 1842, to December, 1845." The second exception, for the same cause, (impertinence,) is, that in his answer he states, "he regards the bill filed by the complainant, as a dishonest attempt to evade the payment of a debt justly due."

Neither of these exceptions, if well taken, (and we are not called upon to express any opinion as to whether they should be sustained,) affects the merits of the case upon which the injunction rests. If the supposed exceptionable parts of the answer were stricken out, the case would stand precisely where it now does. We think, therefore, the decree of the chancellor, dissolving the injunction, was correct, and it is consequently affirmed.

DARGAN, J., did not sit in this cause.