MITCHELL *v.* HACKETT & DICKENSON.

PLAINTIFF in execution, after assigning his judgment, pretended falsely and fraudulently to be the owner of it, and so pretending made a contract to discharge the judgment by taking the note of third persons not negotiable, in the mercantile sense, in payment; the makers of the note agreed to this under the supposition induced by him that he was the owner. *Held*, that the makers of the note, on discovering that the plaintiff was not the owner of the judgment, properly refused to pay the note, even to assignees before maturity thereof.

A Sheriff, under his general powers, cannot take anything but legal currency in satisfaction of an execution, and where he takes a note, indorses it on the execution and then returns it satisfied, the return is not conclusive, and, perhaps, not *prima facie* evidence of satisfaction, unless it shows some authority for receiving the note.

On motion for new trial, it is irregular for the Court to reverse its first judgment, and render a contrary one, without hearing or notice.

APPEAL from the Thirteenth District.

*L. Quint*, for Appellants.

I.   The Sheriff had not the power to discharge the execution even by returning it satisfied, unless he proceeded to execute it in due course of law.

The taking of a negotiable promissory note, receipting it as payment, and returning the execution satisfied, would not operate as a discharge of the execution, (much less of the judgment,) even though the defendant afterwards pay such note to third parties, to whom it has been assigned. (*Bank of Orange County* v. *Wakeman*, 1 Conn. 46; *Hart* v. *Watterhouse*, 1 Mass. 433; 19 Wend. 80.)

Taking the note of a third party, or even a note of the party himself, for a pre-existing debt, does not extinguish the debt unless it be so expressly understood and stipulated. (*Ramsdell* v. *Percival*, 12 Pick. 126; *Wilkins* v. *Hill*, 8 Id. 523; *Pomeroy* v.

*Rice,* 16 Id. 22; *Greenwood* v. *Curtis,* 4 Mass. 93; Thom. on Bills, 192, 194; *Cole* v. *Sackett,* 1 Hall. 516.) If the payee of· a valid promissory note give it up to the maker as part of the consideration for a new note, which is afterward avoided on the ground of usury, he may recover of the maker the amount of the original note. (*Ramsdall* v. *Soule,* 12 Pick. 126; *Johnson* v. *Johnson,* 11 Mass. 359; *Thurston* v. *Percival,* 1 Pick. 415; *Stebbins* v. *Smith,* 4 Id. 97.)

A levy upon personal property does not operate as a satisfaction of the judgment, when property has been claimed and recovered by a third party, or the levy released, and the property returned to the defendant, or when it is fraudulently withdrawn by the defendant. In this case the property levied upon was never out of the possession of the Respondent, Mitchell, at all. The levy was released upon the arrangement made in regard to the Gardinhire & Martin note, and Mitchell appropriated it to his own use. The doctrine for which the Respondent contends, is based upon the principle, that, by a lawful seizure, the debtor loses his property in the goods, etc. (*Ladd* v. *Blunt,* 4 Mass. 402; *Bagley* v. *French,* 2 Pick. 586.) The reason of the rule wholly fails in this case, because this apparent satisfaction was brought about through fraud. Fraud vitiates everything. (2 Starkie on Ev. 586; *Lownds* v. *Remson,* 7 Wend. 25.) Where fraud in law, or fraud in fact, taints a part of a transaction, the whole falls to the ground. (*Toaffe* v. *Josephson,* 7 Cal. 548; *Mackie* v. *Cairnes,* 5 Cow. 548; *Hylop* v. *Clark,* 14 Johns. 464; *Austin* v. *Bell,* 20 Id. 449.)

The return of the execution in the case of *Hackett & Dickenson* v. *Mitchell et als.* and the satisfaction which appears indorsed thereon, should be treated as if no such return had been made at all. (*Belcher* v. *Belcher,* 10 Ferg. 121.) Again, although a levy under an execution on property sufficient to satisfy the same, is ordinarily a satisfaction of the judgment, yet it is not so when the property is fraudulently withdrawn by the defendant from the possession of the officer. (*Mickells & Gumaer* v. *Haskins,* 11 Wend. 126.)

II. It is claimed that every principle was settled in the case of *J. D. Morley* v. *Hackett & Dickenson.* In this counsel is mis-

taken. Morley was the surety upon the bond upon which this judgment sought to be enjoined was recovered, and it does not follow, that, because the surety was discharged, the principal debtor was also.

III. The Court erred in reversing the judgment already entered in the case, and entering up the judgment for the plaintiff. There was simply a motion for a new trial, and the only question for the Court, upon that motion, was whether to grant it or not.

*E. F. Hunter*, for Respondent.

1. An execution returned satisfied operates as a satisfaction of the judgment. (1 Cow. 48; 15 Johns. 247 ; 11 Mass. 359.)

2. The finding of fraud by the Court in the case of *Hackett & Dickenson* v. *Gardenhire & Martin*, could not affect Mitchell; he was not a party to the suit.

Hackett & Dickenson should have sued Mitchell upon his indorsement, and then, if Mitchell, in his defense, could show that he obtained the note honestly, and had not been served with notice of demand on the principals, he would have been entitled to judgment.

Mitchell holds a judgment against Gardenhire, and is secured by levy of execution upon sufficient property, and is about to sell. An arrangement is made in the presence of Hackett and Myers, the Sheriff, whereby Mitchell takes the six hundred and fifty dollar note, and satisfies his execution ; he indorses it, it passes into the hands of his execution creditors, and the Sheriff returns the execution satisfied ; the whole is one transaction ; all the parties are present and assent thereto. Had the arrangement not been made Mitchell would have sold Gardenhire's property under his execution, and applied the proceeds to the satisfaction of the execution against him.

Had Mitchell been made a party to the suit of *Hackett & Dickenson* v. *Gardenhire & Martin*, and the finding of the Court had been the same, then the defendants herein would have pursued the remedy which is here sought to be enjoined; but until he has had an opportunity to defend himself against the charge of fraud, the presumptions are that his transactions were honest,

---

---

and being honest, the return of the execution satisfied, is a satisfaction of the judgment.

To enforce this execution against Mitchell, will be to perpetrate a fraud upon him, for his judgment against Gardenhire is satisfied, and if it were not, Gardenhire is insolvent.

3. A Court of Equity, so long as its jurisdiction attaches, may reverse, modify, or enter up, such other or further decree, as the equities of the case may demand. Every principle in this case had been settled by the Supreme Court, in the case of *Morley* v. *Hackett & Dickenson*, before referred to, and to force the plaintiff to further legislation and expense in the matter, every fact being before the Court, would have been oppressive.

BALDWIN J. delivered the opinion of the Court—COPE, J. and FIELD, C. J. concurring.

Respondents, in 1854, recovered judgment against one Jacob H. Gardenhire, for some six hundred dollars and costs. On the same day the plaintiff therein assigned the judgment. Mitchell, without authority from the assignee, caused execution to be issued, and levied upon certain personal property, a portion of which was claimed by S. M. Gardenhire, a son of Jacob, the debtor. Mitchell indemnified, and the Sheriff sold the property. S. M. Gardenhire sued the Sheriff for trespass, and recovered judgment for six hundred and fifty-three dollars. The plaintiff not making the money out of the property of the Sheriff, brought suit against the obligors on his official bond, Hackett & Dickenson, and recovered judgment against them for the amount, which they paid. The Sheriff then assigned to them the indemnifying bond which was made by Mitchell, as principal, and others as sureties. Hackett & Dickenson instituted suit upon the bond, and recovered judgment for the amount paid by them for the Sheriff. Upon this judgment they issued execution, and placed the same in the hands of the then Sheriff, who levied on certain personal property of Mitchell, and advertised it for sale. Pending this proceeding, Mitchell procured another execution to be issued upon the judgment against Jacob H. Gardenhire, and caused the same to be levied on certain personal property in possession of Jacob H. Gardenhire, the debtor. Afterward S. M. Gardenhire and one H. H. Martin, a son-in-law of Jacob

H. Gardenhire, executed their promissory note to Mitchell for the amount due on the execution, payable sixty days after date, under the promise and agreement that Mitchell would satisfy the execution and judgment of record, then standing against Jacob H. Gardenhire. The execution then in the hands of the Sheriff against him, Mitchell and others, sureties upon the indemnity bond, was returned satisfied by the indorsement of his note, and another given for costs, and the property levied upon was released and given up to Mitchell. When this note became due, the Appellants, to whom it had been assigned, demanded payment, which was refused, on the ground of fraud on the part of Mitchell, and want of consideration. Suit was brought on this note against the makers. The Court found in that suit that there was no consideration for the note, and that it was fraudulently obtained by Mitchell, and gave judgment for S. M. Gardenhire and H. H. Martin, the makers. The Appellants, Hackett & Dickenson, then issued execution upon their judgment against Mitchell and others, and had it levied on the property of Mitchell, to satisfy the same. This action is brought to restrain the proceedings under the execution, and for a perpetual injunction. The District Court, on the trial, gave judgment for the defendants, and, on motion for a new trial, reversed the former judgment, and entered judgment in favor of the plaintiff, and from this decree this appeal is now taken.

We understand the substance of the bill and proof to be this : That Mitchell having sold and transferred this judgment, afterward pretended to be the owner of it, and issued execution, and dealt with the debt as his own; that he agreed to satisfy it, and have satisfaction entered of record of the judgment, in consideration of a note to be made to him by Gardenhire & Martin, and that he assigned this note to Dickinson & Hackett, in discharge of the execution and judgment against Mitchell and others, in favor of Hackett & Dickenson. Assuming that Mitchell, after the transfer of the judgment, and the entry of the fact of transfer on the records of the Court where the judgment was rendered, could have made this arrangement with the defendants in execution, the defendants not knowing the true state of facts, yet it is clear that whenever the makers of the note discovered the fact that Mitchell had no authority to deal with the judg-

43

ment, they were bound in equity and in common honesty, to re-fuse to comply with their agreement to pay him, if they could do so consistently with the rules of law. If the note was negotiable, within the rules and protection of the law merchant, then the negotiation of it would bind them to pay it; but it seems that the note was not then negotiable—being made payable to Mitchell, without the words, or order or bearer.

The Sheriff took this note and made a return of satisfaction on the execution. But this return is not conclusive; perhaps, under the circumstances, would not be even *prima facie* evidence of the fact that the execution was satisfied; for the Sheriff is not authorized by his general powers, to receive anything but legal currency in satisfaction of an execution, and the return does not show any authority to receive this note in payment. The case then resolves itself into this simple proposition : The plaintiff in execution, after having assigned a judgment, pretended falsely and fraudulently, to be the owner of it, and so pretending, made a contract to discharge the judgment by taking a note not negotiable, in the mercantile sense, in payment; the makers of the note agreed to this arrangement, under the notion induced by him, that he was the owner; they afterwards discovered that he was not. When they did so ascertain, they refused to pay the note. They certainly were not, to say the least, bound to confirm and give effect to a contract which would result in defrauding the true owner of his property. They were no more bound to pay after giving the note, than before; and knowledge of the true ownership of the judgment, charged them as effectually any time before payment, as it would have charged them, if, knowing before making this arrangement the fact of this assignment, they had gone on to make it. In other words, they dealt with Mitchell as if he were owner, on his representation of that character—but they so dealt as not to bind themselves either to him or to his assigns, if the representations were fraudulent; they have discovered that the representation was false, and they can now, on that ground, rescind the contract.

The obvious equity of this view of the case, impressed the learned Judge below with the conclusion just expressed; but he reversed his first decision upon the construction he gave to the opinion of this Court in the case of *Morley* v. *Dickenson*, (12

Cal. 561.)   But the question in that case was wholly different from that arising from the facts in this.   In that case the plaintiff was a surety, and there was no proof that Mitchell had no authority to make the contract for taking the note, or that this was known before the maturity of the note, to the maker of it, or that the note was not negotiable within the law merchant. We passed upon that case upon the facts in the record, which may have been different from the real facts, and certainly seem to be different from those now before us.

Mitchell files this bill to carry out, in effect, this fraudulent arrangement.   But he must do equity before he can ask it.   The defense of this fraud is set up in the answer.   It is true, that a payment was made by Mitchell on this arrangement, for costs of the suit.   But this sum may be deducted from the judgment, or he may be credited with it, which would do complete equity between the parties.   The outstanding note, or his indorsement, does not stand in the way of this conclusion; for the note, as to the makers, has already been disposed of by the judgment, and the decree would effectually protect the indorser.

We have taken the case as the record seems to give it, though the statement is so made up, that it is not a little difficult to ascertain the facts which were legally proven.   But when the case goes back it can be fully tried *de novo*, if the parties desire.   It was irregular for the Judge to grant the new trial, and then immediately proceed to render a contrary judgment without hearing or notice.

Judgment reversed and cause remanded.