WILLIAM R. CLOTHIER, Respondent, *v.* JOHN P. ADRIANCE et al., Appellants.

One B., through fraud, procured of defendants goods upon credit, for which he gave his notes, and as collateral security gave a mortgage upon lands which he did not own, and transferred a fictitious note and a policy of life insurance. To settle defendants' claim, B., through fraud, of which defendants had no knowledge or notice, procured plaintiff's indorsement to two notes made by B., payable to defendants, which were to be and were used in taking up the old notes, and upon receipt defendants surrendered said notes and the collaterals. Upon discovery of the fraud plaintiff brought suit to have his indorsements canceled. *Held*, that although the presumption of law from the face of the notes was that plaintiff was only liable as subsequent indorser, yet it appearing that he intended to become security for the debt to the payees, he was liable as such; that the surrender of the original notes was a sufficient consideration to make defendants *bona fide* holders of the new notes, and that their position as such was not affected by the fact that they were the payees named therein, and that plaintiff therefore had no cause of action.

(Argued September 21, 1872; decided January term, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial district, affirming judgment in favor of plaintiff, entered upon the report of a referee.

The action was brought to compel the cancellation of certain indorsements made by plaintiff.

In the summer of 1866 the defendants, as copartners, sold and delivered to one William H. Bennett, on credit, certain

mowing machines, and a settlement of the account was had between defendants and Bennett on the 31st of October, 1866, at which time he gave defendants his three several promissory notes, dated 31st October, 1866, in the aggregate amount of $5,994.44, as follows:

One note due November 17, 1866 ............. $1,006 42
One note due January 3, 1867 ................ 2,530 62
One note due March 3, 1867 .................. 2,457 40

Bennett at the same time gave to defendants, as collateral security for the payment of these notes, a mortgage for $3,500 on certain land in Northumberland, Saratoga county, N. Y., which he represented to be owned by him; also a note for $2,000, purporting to be signed by one Cook and one Harrison, and also assigned to defendants a policy of insurance on Bennett's life for $3,000. Bennett procured credit of the defendants upon his fraudulent representations that he was of full age, owned the farm upon which he gave the mortgage, and was worth between $4,000 and $5,000.

Bennett failed to pay the first two of his notes as they fell due, the Cook and Harrison note went to protest in January, 1867, and about the 4th of February, 1867, the defendants called on him at Saratoga and pressed a settlement. At this time defendants discovered that Bennett was not the owner of the farm mortgaged, and that the Cook and Harrison note was fictitious.

A settlement was had between defendants and Bennett, and receipts were passed between them, the defendants receiving in payment of the three notes of Bennett held by them certain mowing machines, a small amount of cash, and two new notes, both dated 4th February, 1867, one at nine months for $1,500 and interest, the other at one year for $3,169 and interest, both made by Bennett and indorsed by the plaintiff, and surrendering to Bennett the three notes of 31st October, 1866 (one of them for $2,457.40, not being then due), the Cook and Harrison note, the policy of life insurance, and the mortgage on the farm.

The evidence showed that Bennett procured the indorse ments of plaintiff to the two notes of 4th February, given to defendants on the settlement on that day, for the purpose of delivering the same to the plaintiff, and the indorsements were procured by the fraud of Bennett.

The defendants had no notice of the fraud of Bennett in obtaining the plaintiff's indorsements. Upon these facts the referee decided that the plaintiff was entitled to have his indorsements canceled upon paying to defendants $46.58, with interest from the date of his report, that being the value with interest of the life policy.

*William P. Chambers* for the appellants. Defendants were entitled at maturity to charge plaintiff as first indorser. (*Hall* v. *Newcomb*, 7 Hill, 416; *Spies* v. *Gilmore*, 1 Comst., 322; *Waterbury* v. *Sinclair*, 11 How. Pr. R., 329; *Moore* v. *Cross*, 19 N. Y., 227; *Bacon* v. *Burnham*, 37 id., 614.) The sur- render of the October notes and the receipt of the February notes constituted defendants *bona fide* holders for value of the latter notes, and they can enforce them against plaintiff. (*Youngs* v. *Lee*, 18 Barb., 188; affirmed, 2 Kern., 551; *Brown's Ex'rs* v. *Leavitt*, 31 N. Y., 113; *Pratt* v. *Coman*, 37 id., 440; 5 Trans. App., 334; *Day* v. *Saunders*, 1 id., 352; S. C., 3 Keyes, 347; *Hatters' Bank* v. *Phillips*, 6 Trans. App., 302; *Park Bank* v. *Watson*, 42 N. Y., 490; *Chrysler* v. *Renois*, 43 id., 209; *Paddon* v. *Taylor*, 44 id., 371; *Spies* v. *Gilmore*, 1 Comst., 322.)

*J. W. Crane* for the respondent. Plaintiff occupies the position, as between himself and defendants, of second indorser. (*Herrick* v. *Carman*, 12 J. R., 159; *Bacon* v. *Burnham*, 37 N. Y., 614, 616, 618; *Baker* v. *Martin*, 3 Barb., 634; *Tillman* v. *Wheeler*, 17 J. R., 326.) Defendants are original parties to the notes, and the equities of plaintiff are available against them. (*Milton* v. *Rogers*, 14 Wend., 575; 11 id., 484; *Hedges* v. *Seeley*, 9 Barb., 214; 2 Kent's Com. [7th ed.], 94, and cases cited; *Nelson* v. *Cowing*,

6 Hill, 336; *Gilbert* v. *Sharp*, 2 Lans., 412.) Defendants cannot be *bona fide* holders of the notes in question as against plaintiff. ( *Williams* v. *Smith*, 2 Hill, 301; *Francis* v. *Joseph*, 3 Edw. Ch., 182; Willard's Eq. Jur., 256, 257, and cases cited.)

HUNT, C. It is well said, in the opinion of the court below, that the question before us is the same as it would have been if Adriance & Co. had sued Clothier upon his indorsement of the notes in question. The point would be presented more simply in such a suit, but it would be the same point. In such an action the *prima facies* would be against Adriance & Co. Where a note is made payable to the order of Adriance & Co., indorsed by them and subsequently indorsed by Clothier, the presumption of law is that the indorsement of Adriance was intended to precede that of Clothier. (*Bacon* v. *Burnham*, 37 N. Y., 616; *Herrick* v. *Carman*, 10 John. R., 224; S. C., 12 id., 159.) Clothier would be liable as an indorser only, and as an indorser subsequent to Adriance.

It is well settled, however, that where in fact the party to such a note, standing in form as second indorser, put his name upon the papers with the intention and for the purpose of becoming security to the payee of the note for the debt of a third person, he will be so held. In such a case the payee may indorse the note without recourse, transfer it to another, and the second indorser will be liable, without right of recourse to the payee. (*Moore* v. *Cross*, 19 N. Y.. 227; *Labron* v. *Woram*, 1 Hill, 91.) In the case first cited the learned Ch. J. JOHNSON held that the indorsement, without recourse, being a mere matter of form could be made at the trial, or, on an appeal, could be deemed to have been made.

In the action before us, while it is proved that the indorsements of Clothier were obtained by the fraudulent representations of Bennett, it is conceded that he made the indorsements for the purpose of giving to Adriance & Co. the security of his name for the debt of Bennett. He intended to become security to Adriance & Co. He did not intend, as

the form of the notes indicated, that they should be liable to him.

An indorsement, although fraudulently obtained, binds the maker thereof, where the note becomes the property of a *bona fide* holder for value, without notice. Adriance & Co. had no notice or suspicion of the fraud perpetrated by Bennett, but the point is made that they are not *bona fide* holders for value. That the value given to Bennett was, in law, a sufficient consideration, can hardly be doubted at this time. When the note was received by the appellants from Bennett they surrendered and delivered up to him his three promissory notes to the amount of $5,994.44. Of these notes two were past due and one had not matured. They satisfied a mortgage purporting to be security for $3,500, a note for $2,000, signed by Harrison & Cook, and a policy of insurance upon his life. The notes of Harrison & Cook were said to be fictitious and the mortgage to be worthless. As the surrender of the notes of Bennett forms a sufficient consideration under our authorities, it is not necessary to discuss the effect of the surrender of the other instruments. (*Youngs* v. *Lee*, 2 Kern., 551; *Brown* v. *Leavitt*, 31 N. Y., 113; *Day* v. *Saunders*, 3 Keyes, 347; *Pratt* v. *Coman*, 37 N. Y., 440; *Paddon* v. *Taylor*, 44 id., 371.)

It is argued that the appellants are *original parties* to the notes in suit, that the equities are available against them, and that they cannot be *bona fide* holders. It is not entirely clear what is meant by calling them original parties. They certainly are parties named in the note as payees, and, so far, are original parties. In *Moore* v. *Cross* (*supra*), it was held that parties occupying precisely that position were *bona fide* holders, and were at liberty to recover, notwithstanding the equities of the indorser.

It is further insisted that the appellants are not *bona fide* holders, because no property was parted with on the faith of the indorsements; that Bennett was the maker of the new notes as well as the maker of the surrendered notes, and that the only effect of the transaction was to give him an exten-

sion of credit during the running of the new notes. It is a sufficient answer to this argument to say that in many of the reported cases where the surrender of a debtor's note was held to be a sufficient parting with value to constitute him a *bona fide* holder of the new one, the liability of the original debtor was retained. Thus, in *Day* v. *Saunders* (*supra*), the new notes, like those here, were made by Whipple, the original debtor, whose liability was thus continued. In *Pratt* v. *Coman* (*supra*), the case states that the liability of Agnew, the original debtor, was continued by his indorsement of the new notes.

The judgment should be reversed and a new trial ordered.

All concur.

Judgment reversed.