## Heist *et al. versus* Hart.

1. Defendant gave to Hevner a negotiable note in payment of a patent which defendant alleged was a fraud : plaintiff being about to discount the note, defendant told him not to buy it, that Hevner had promised when the sale was made that he would not negotiate it ; that if plaintiff bought it he would buy a lawsuit ; no notice was given to plaintiff that the sale was fraudulent. Plaintiff having discounted the note, *Held*, in a suit on it, that these facts were no defence although Hevner had committed a fraud on defendant in the sale.

2. A parol agreement although made at the time of making negotiable paper, that the payee will not negotiate it and would renew it, &c., is inadmissible to vary the effect of the paper.

March 3d 1872. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Bucks county :* No. 220, to January Term 1873.

This was an action of assumpsit brought August 16th 1871, by Josiah Hart, survivor of the firm of J. Hart & Co., against Allen H. Heist and Thomas H. Heist, trading as Allen H. Heist & Co.

The cause of action was the following note :

"$2000.                         Philadelphia, October 19th 1870.
          Seven months after date we promise to pay, to the order of ourselves, Two Thousand Dollars, without defalcation, for value received.                         ALLEN H. HEIST & Co."

Endorsed ' ALLEN H. HEIST & Co., P. HEVNER.'

The case was tried, December 11th 1872, before Roberts, J., notice having been given to plaintiff that he would be required to show that he was a bonâ fide holder of the note for value.

The plaintiff gave the note in evidence and rested.

Allen H. Heist (defendant) testified that Hart (plaintiff) told witness that there was a man at plaintiff's bank who held a note against defendants and wanted it discounted. " I asked what note. He said a note for this machinery and patent right. I told him I thought it very strange that a man was here with that note, because he (P. Hevner) had promised me not to negotiate that note ; he would lock it up in his fire-proof and there it should remain until due. Mr. Hart then said that of course it ought to have been put in the note, that it was not negotiable. I told him of course it would have been better, but Hevner made such fair promises that I thought everything would be right and that he would not negotiate the note. Mr. Hart said he thought he would come up and see about it whether it was all right. He then said the note could be gotten at a good discount. I then told him if it could be got right so as to let me out I would buy it myself, but I did not think I could buy it so as to let me out. He then asked me if he should buy it for me. I asked if he would furnish the money. He said if he would furnish the

[Heist *v.* Hart.]

money he would buy it for himself.  I told him again I did not think I could buy it so as to let me out, but asked to go and see Tom, my brother, and see what he would have to say in regard to the matter.  Hart and I then started towards Tom's office, and met Tom; told Tom that Hart was here with a note that this man from Philadelphia had come up to have discounted; he told Hart he thought it very strange that that man was here trying to negotiate that note, because he had made such fair promises not to negotiate it, but lock it up in his fire-proof until it was due.  Mr. Hart then said that 'not negotiable' should have been put in the note.  Tom said it would have been better.  Then Hart said, 'But of course if I buy the note it can be collected.'  I spoke up, 'But you have notice of it now.'  I think he asked if the machinery did not work; we told him we could not tell much about it yet, but did not think it was all right; knew it was not all right. I do not recollect all here, but Hart got warmed up a little.  Tom and I then stepped back and talked the matter over what we had better do.  Tom then walked up to Mr. Hart and said, 'Mr. Hart, I now give you notice not to buy that note.'  Hart said, 'If you do not want me to buy the note I won't buy it;' before he said that he also said he did not want to buy a lawsuit, and then said, 'If you do not want me to buy it I won't buy it,' then started down the street; think it was in the latter part of December 1870, shortly after the machinery was put up.''

Witness further testified that he had given this note for part of the purchase-money of a whiskey-refining machine which he had bought from Peter Hevner, one of the endorsers of the note; at the time of negotiating the purchase, Hevner told him that new whiskey run through the machine was equal to any three-year-old whiskey; Hevner showed witness a paper in which it was said that Hevner had paid $40,000 for the patent right for Pennsylvania; witness and Hevner agreed for the purchase of the right for Bucks county and a machine, for $9000, for which a check and notes, including that in suit, were given.  Hevner said when the notes became due he would help defendants to renew them; would give defendants all the time they wanted.  Hevner said he would put the notes in the fire-proof and not negotiate them. The machine was worth nothing, but as second-hand machinery; none of Hevner's representations were true.  He said the machine would run ten barrels per day, and it did not run over three or four.

T. H. Heist, the other partner, testified as to the interviews with the plaintiff much as the previous witness; he said also:

"I told Hart the notes were given for patent and machinery, that they were not to be negotiated, and that we had not had time to tell whether the machinery was right or not; that he would buy a lawsuit, and that there was a dispute.  Stated no facts in re-

[Heist *v.* Hart.]

lation to the machinery. Told him not to buy the notes. Hart said if he bought we would have to pay for them; told him I guessed not; he had notice, now. I told him we had not had time to test machinery, and Hevner had promised not to negotiate the notes.''

A witness who had sold the patent to Hevner said that "$40,000" was put into the assignment as the consideration, in order to enable him to sell the patent better; the actual consideration was between $4000 and $5000.

The defendants gave other evidence of Hevner's agreement not to negotiate the notes, to renew them until defendants could meet them, &c.; and of his misrepresentations as to the patent; also that the machine was not in fact what he had assured them it was.

The plaintiff in rebuttal testified that he had asked Allen Heist if the note, which had been offered to him for discount by a stranger, was all right, Heist said he did not want plaintiff to buy it; if anything was made out of it he wanted it himself; at this interview Thomas Heist was not present. Defendant afterwards bought the note, and paid $1800 for it. Four weeks after he had bought the note he had the conversation substantially as stated by defendants. He did not then tell them that he had bought the note. When witness first saw Allen about the note he made no objection to its validity, nor to plaintiff's buying it, except that he wanted to buy it himself; nothing was said about the machine not running right.

There was much more evidence on both sides substantially of the same character.

Neither party submitted points.

The court charged as follows:—

"I charge you, gentlemen, positively, that the holder of a promissory note, who took it bonâ fide for value before maturity without notice of the fraud, can recover, even though he took it under circumstances which ought to have excited the suspicion of a prudent man. [If you should believe the evidence of the Messrs. Heist upon the subject of the notice given by them to Mr. Hart, it is not, in the judgment of the court, a sufficient notice to enable the defendants to set up the fraud,] if there was fraud practised upon them by Peter Hevner.

"[This conclusion of the court compels me to say to you, that if you believe the evidence, you will render a verdict for the plaintiff in full of the principal of the note with interest from the time it falls due."]

The verdict was for the plaintiff for $2188.35.

The defendants removed the record to the Supreme Court by writ of error, and assigned for error the parts of the charge in brackets.

[Heist v. Hart.]

*N. C. James* and *G. Lear* (with whom were *H. Lear, J. M. Shellenberger, L. L. James, T. H. Heist* and *G. Ross*), for plaintiff in error.

*H. Yerkes,* for defendant in error.—The notice to plaintiff to prove he was a bonâ fide holder did not put the burden on him to prove that: Swift *v.* Tyson, 16 Peters 1. It must be shown he took the note malâ fide: Phelan *v.* Moss, 17 P. F. Smith 59 ; 2 Hilliard on Contracts 396, note ; Goodman *v.* Simonds, 20 Howard 343. The notice must not be ambiguous : Parsons on Notes 259, 260 ; Perkins *v.* Challis, 1 N. H. 254.

The opinion of the court was delivered, March 10th 1873, by

SHARSWOOD, J.—The question raised by the first assignment of error, is whether there was sufficient evidence to submit to the jury, that the plaintiff below, the endorsee of the note in suit, before he took it, had notice of the fraud in the sale of the patent right which formed its consideration. It is not pretended that distinct notice of the fraud was given to him, or even that the Heists gave him notice generally, that they had been defrauded. Unaccompanied with any allegation, that there was a representation or warranty at the time of the contract, that the machine was to produce certain results, the mere statement that it did not work right, was no defence to the note. Nor was the fact that Hevner had agreed not to negotiate the note, and to renew it until it could be paid out of the profits, any more available, even as between the parties. Such a parol agreement, though made at the time, is inadmissible in evidence to vary the effect of the written contract in the case of negotiable paper : Hill *v.* Gaw, 4 Barr 493 ; Mason *v.* Graff, 11 Casey 448. Hart understood this, for he told Heist that if such was the agreement, the note should have been made non-negotiable on its face, and Heist assented to it. The information communicated by the Heists to Hart, so far from notifying him of any defence, was calculated to mislead him to believe there really was none. A mere general notice that there was some defence, and that the note would not be paid, might be enough to put a party on inquiry. Hart may have been bound to ask the maker what was his defence. When he does so, however, and is only told what is clearly no defence, there is nothing which ought to impeach his bona fides. The first assignment of error is not sustained.

Nor is there any ground for the second error assigned. Conceding that the production of the assignment of the patent right for Pennsylvania by Harris & Oliver to Hevner, for the consideration of $40,000, and the representation by Hevner, that he had paid that sum, when in fact, the true consideration was only four or five thousand dollars, and that the larger amount had been inserted by Hevner's request to enable him to impose upon the purchasers of county rights, was a fraud, which, between the parties,

23 P. F. SMITH—19

[Heist *v.* Hart.]

avoided the note, and conceding that the proof of this was sufficient to entitle the makers after notice, to require the holder to prove that he had given value, yet the evidence of Hart, which was entirely uncontradicted, was, that he had paid $1800 for it. The charge of the learned judge below, so far as regarded this point, that if the jury believed the evidence, they should find for the plaintiff, was therefore entirely correct.

Judgment affirmed.