## Joseph H. Muhlke v. Henry Hegerness.

1. BURDEN OF PROOF—*Fraud and Circumvention.*—The burden of proof is on the defendant who pleads that the execution of a promissory note was procured by fraud and circumvention, to make out his defense by a preponderance of the evidence.

2. WEIGHT OF THE EVIDENCE —*For the Jury.*—The weight and sufficiency of the evidence is for the jury to judge of, subject to reversal by the Appellate Court for abuse. All reasonable intendments and allowances are to be indulged in support of the finding.

3. ORDINARY CARE—*Use of, by Maker of Promissory Note—Fraud and Circumvention.*—In cases where fraud and circumvention in procuring a promissory note is pleaded by the maker in a suit by an innocent purchaser, without notice, and for a valuable consideration, before maturity, the law requires such maker to show that he used ordinary care to protect himself against imposition, and, failing to do so, he will be held liable.

**Memorandum.**— Assumpsit. In the Circuit Court of Ogle County; the Hon. JAMES SHAW, Judge, presiding. Declaration on a promissory note by indorsee; plea of fraud and circumvention; trial by jury ; verdict and judgment for defendant; error by plaintiff. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed December 13, 1894.

FRANC BACON, attorney for plaintiff in error.

BAXTER & GARDNER, attorneys for defendant in error.

MR. PRESIDING JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was a suit by plaintiff in error as indorsee of a promissory note given by defendant in error to P. Janss, as payee, dated 30th October, 1891, for $75. The evidence showed, not contradicted, that the plaintiff in error purchased the note before maturity for $75, January 5, 1892, of Dr. Peter Janss, the payee, without any notice of defense.

The defendant in error pleaded that the execution of the note was procured by fraud and circumvention practiced on him in obtaining his signature to the note, by representing to him that the paper about to be signed was an agreement for the doctor to send him medicine, and to bind defendant in error to take it, and that nothing was said about signing a note.

The case was submitted to a jury, which found the issues for defendant in error. Motion for a new trial was made by plaintiff in error and overruled and judgment against him for costs. From this judgment this appeal is taken.

The only error relied on is that the verdict was manifestly against the weight of the evidence. It is only on a question of fact that we are called upon to review the case and to decide whether the evidence sustains the verdict.

This case is governed by the same rules of law in regard to question of fact as other cases.

The burden of proof is on the defendant who pleads, to make out his case by a preponderance of the evidence, of the weight and sufficiency of which the jury is the judge, subject to reversal by this court for abuse of its powers. This court is required by law to carefully consider the evidence and to refuse to set aside a verdict, except in cases where it is manifestly against the weight of the evidence.

All reasonable intendments and allowances are to be given in support of the verdict.

In this class of cases a person who signs a negotiable instrument must use ordinary care to protect himself against

imposition, and failing to do this he will be held to pay the sum mentioned in it, if in the hands of an innocent purchaser, for value, before maturity. In the case at bar the payee of the note claimed to be a practitioner of medicine located in Chicago, and president of the Illinois State Medical and Surgical Institution, also located there. And the evidence shows that he was in fact a licensed physician.

The issue in question rests entirely on the evidence of the defendant in error on the one side, and the payee of the note on the other, and the accompanying circumstances. The evidence shows that at the date of the note the payee took a livery team at Rochelle, and with a driver, Walters, went into the country where defendant in error was in the field husking corn, to procure him a patient to be doctored by him. Walters was about four rods away in the highway. What took place is only shown by the testimony of the two parties.

The defendant in error testified he was a Norwegian by birth, and had been in this country ten years, and was then thirty-two years of age; that he had never attended English schools, and was not acquainted with Dr. P. Janss; that the latter came to his, witness' place, and said that he was president of the Illinois State Medical Institution, and asked what was the matter with him. Witness said his eyes were sore; the doctor looked at them and said they were bad; the witness replied that " isn't the worst." Had some other sickness that was worse. The doctor said he had experience in that sickness and had cured many. The appellee asked how much he would charge and the doctor told him he would charge $75. Showed him a paper and said it was an agreement. The appellee said, " I signed a paper there. I did not read it. I asked him to read it. He said it was an agreement for him to send the medicine and bind me to take it. I was to get it in the express office. There was no one else present. * * * He had a pen and furnished it to me and I signed it on a wagon tongue. He then put the paper in his pocket and gave me a paper in an envelope, which was shown in evidence and was a printed blank, one side printed in English and the other in German. It was a

direction how to send for medicine and blank spaces to be filled up showing appellee's symptoms. The appellee further testified that there was nothing said about signing a note, and the first he knew about it was when he was notified it was due; that when he signed the paper there was a liveryman a little ways from him, about four rods, and appellee did not know him. Selglid was in the other end of the field about seventy rods off. Mr. Hedge lived about forty, and Lilly about thirty, rods from him, and each had three or four members in family. The appellee testified he tried to read the paper and could not, and stated he could not read writing or printed matter in the English language; that he had made an affidavit to get the judgment set aside in which he stated that he could not read very well. When the doctor handed him the paper he told him he could not read, and he explained it to him and he signed it; that was all he did to learn what was in the paper.

The payee of the note, Dr. Janss, testified in form of deposition to visiting the appellee, October 30, 1891, and of entering into a contract with him for medical treatment for loss of manhood, kidney trouble and complications, for a term of six months, and if not cured, then to treat him free of charge. The doctor identified the note sued on and testified that appellee gave it to him and he gave him back a receipt containing all the terms of the contract, which receipt was introduced in evidence. The receipt recites the reception of the note in question and the terms of the agreement for medical services, and that appellee was to pay $12.50 monthly to be indorsed on the note, etc.

Both the appellant and the payee prove by their evidence the purchase of the note by the former for a valuable consideration without notice of any defense and before due. This, in substance, was the testimony.

We are inclined to think, everything considered, that the evidence shows a want of ordinary care on the part of the appellee, in signing the note, even if his claim is well founded, that he signed it on account of the misstatements of Dr. Janss, and in ignorance that it was a note. The evidence shows that the liveryman, Walters, whom appellee

had seen before, was present within three or four rods, and he also had near neighbors, and that the payee of the note was a total stranger to appellee, yet, according to his own testimony, he signed it simply on the statement of the doctor that it was an agreement to take medicine, without referring it to Walters to be read. The Supreme Court, in two similar cases, in commenting on such circumstances with reference to the negligence of the maker of a note, has held that the signer of such note under such circumstances " can not be regarded " as in the " use of diligence and proper precaution " and held that " due care required that he should have called upon those who were near by, and on whom he could rely, to read the papers for him." Swonnell et al. v. Waterson, 71 Ill. 456; Harris v. Hale, 71 Ibid. 552.

We do not wish to be understood as holding that where a party can not read, there may not be cases where the failure to call on bystanders to read the instrument before signing would be excusable, and where negligence would not be imputed by reason of such failure. Each case depends upon its own circumstances. Sims et al. v. Bice, 67 Ill. 88; Richardson v. Schirtz, 59 Ill. 313; Munson, use, etc., v. Nichols, 62 Ill. 111; Strong v. Linington, 8 Brad. 445.

But in the case at bar we see no excusable circumstance which would tend to free appellee from the charge of negligence in not calling on Walters to read the note or paper proposed to be signed, before signing it. Had he done so, if fraud was being attempted, it would have been discovered, or at least appellee would have been freed from the charge of negligence.

Then appellee held Dr. Janss' receipt, plainly stating in it that he had received appellee's note for $75, and how appellee could have kept that paper till after the note was due and he was asked to pay it without discovering that he had given a note, we can not comprehend. We are inclined to think from the entire evidence that appellee knew he was giving the note at the time. At least the jury were not justified in finding appellee free from negligence.

The judgment of the Circuit Court is reversed and the cause remanded.