Rowland v. Fowler.

EDWARD S. ROWLAND vs. DAVID W. FOWLER.

47  347
64   74

The maker of a negotiable note is liable thereon to a purchaser for value before maturity without notice of any defect, even if he misunderstood the legal effect of the instrument or was induced by fraudulent representations to execute it; and this without regard to the question of negligence on his part.

In a suit by a holder against the maker of a promissory note, the defendant claimed that he was induced to give the note by fraud, and that its appearance was such as to put the plaintiff on enquiry before taking it. Held that the defendant might enquire of a broker whom he called as a witness, whether a banker or broker would discount a note of that appearance without a wilful failure to enquire into the circumstances under which it was obtained.

ASSUMPSIT on an endorsed note; brought to the Superior Court in New Haven County, and tried to the jury, on the general issue with notice of fraud in the procuring of the note, before *Martin, J.* Verdict for the defendant, and motion for a new trial by the plaintiff. The case is sufficiently stated in the opinion.

*C. S. Hamilton,* in support of the motion.

*C. H. Fowler,* contra.

PARDEE, J. This is an action of assumpsit upon a negotiable note made by the defendant, whereby he promised, for value received, to pay six months after date to the order of the Granite Agricultural Works of Lebanon, New Hampshire, at the New Haven National Bank, $213.75; the same having been endorsed by the payee by one Thompson as agent, and delivered to the plaintiff before maturity. The jury in the Superior Court rendered a verdict for the defendant, and the plaintiff moves for a new trial.

It appears by the motion that, upon the trial, the plaintiff testified that for twenty years he had discounted notes as a banker or broker; and that he purchased the note in suit without inquiry either as to the circumstances attending the making of it or as to the authority of Thompson to endorse it as agent of the payee.

Referring to this testimony the defendant called attention to what he characterized as the peculiar and unusual appearance of the note; to the fact that it was written upon tracing

paper; that it was made by a farmer; that it did not appear
whether the payee was a corporation, firm or individual; and
that the plaintiff purchased it without evidence as to the
authority of Thompson to endorse it. And the defendant
claimed that the appearance of the note, and the conduct of
Thompson at the time it was purchased by the plaintiff, were
calculated to excite in his mind suspicions that it was fraudu-
lent in its origin; that he wilfully and fraudulently refrained
from inquiry as to the circumstances attending the making of
it; and that he refrained because of his belief that such
inquiry would give him knowledge that the note was either a
fraud or a forgery.

In connection with these claims the defendant introduced
witnesses, each of whom testified that he had for many years
discounted notes as a banker or broker in New Haven; and
notwithstanding the objection of the plaintiff, each was
allowed to answer the following question: "In May, 1876,
would a banker or broker discount a note of that character
without a wilful failure to inquire into the circumstances
under which it was obtained?"

The defendant had furnished to the jury such information
as he was able or desired to give them concerning the circum-
stances attending the making and transfer of the note, they
had informed themselves as to the appearance of the paper by
inspection; and they had learned from the plaintiff that he
had discounted notes for twenty years.

The import of the question is—what degree of caution
would an honest man, with such an experience, have exercised
in the purchase of the note? a question concerning a transac-
tion quite within the range of common knowledge, not
involving any matter of science or unusual skill; a question
which it is the office and duty of jurors to answer upon the
facts proven without the intervention of experts.

It was a part of the defendant's case that the note was
obtained from him by fraud.

The court charged the jury as follows:—"No matter what
representations were made by Thompson to the defendant to
induce him to sign the note, no matter how false, deceitful
and fraudulent such representations may have been, if the

defendant signed the note in suit understanding and supposing he was signing a note, he is liable for its payment. But if the defendant was induced by some trick or fraudulent and deceitful artifice or device of Thompson to put his name to a paper which he did not understand or suppose to be a note, and by such trick, artifice or device of Thompson he was made to believe that the paper on which he was placing his name was not a note, but an instrument of an entirely different character, and the defendant was guilty of no negligence on his part, then he is not liable, and the note may be regarded for the purposes of this case as not being the note of the defendant."

It is quite possible that this language, applied to the claim of the defendant, misled the jury.

The law is that the maker of a negotiable note is liable thereon to a purchaser for value before maturity, without notice of any defect, even if he misunderstood the legal effect of the instrument or was induced by fraudulent representations to execute it; and this without regard to the question of negligence.

A new trial is advised.

In this opinion the other judges concurred.