AMOS A. GREEN v. LOUISA A. WILKIE, Appellant.

**Negotiable Instruments:** FRAUD: *Innocent purchaser.* An illiterate maker of a note and mortgage for one thousand dollars, who is fraudently induced to sign them, supposing that he is signing a lease and a note for one hundred dollars to a different payee, is not liable on the note, even, when it is in the hands of an innocent purchaser, unless he was guilty of negligence in making it; since he was never a party to such contract.

*Negligence.* In an action on a note and mortgage for one thousand dollars, it appeared that they were given to F's wife, and by her assigned to plaintiff, without notice; that defendant, the maker, about to sell a piece of land given him by his father, and purchase another, went to the office of F, who was acting for the person to whom the defendant was selling, and the sale and purchase were completed; that there had been a lease on the land in favor of defendant's father, whereby defendant was required to pay a certain rent while he remained single, and that this had been released to enable defendant to sell; that afterwards, at F's suggestion, defendant agreed to make a new lease and note for one hundred dollars, to his father, on the land purchased; that F, at his office, prepared, instead, the note and mortgage in suit, which defendant afterwards signed, thinking them to be the note and mortgage agreed on; that defendant could not read and could write only his name; that he never received anything for the note and never agreed to make it   *Held,* that the note never had an existence, in the sense of the minds of the parties meeting, to give it validity.

**Same.** Since the business was between the defendant and his father, there was no apparent motive for F to make the papers in any way except as agreed, and therefore defendant was not chargeable with negligence for not ascertaining the character of the papers drawn.

*Appeal from Marshall District Court.*—HON. D. R. HINDMAN, Judge.

MONDAY, APRIL 13, 1896.

ACTION for the foreclosure of a mortgage. Judgment for plaintiff and defendant appeals.—*Reversed.*

*Anthony C. Daley* and *Theodore F. Bradford* for appellant.

The principal is the same as in forged instruments, or in instruments made by persons not having capacity. The fact that the instrument is put in the form of negotiable paper, gives it no additional validity.

The paper is not, in fact, or in law, what it pretends to be, the obligation of an alleged maker.

*Briggs v. Ewart,* 51 Mo. 245 (11 Am. Rep. 447); Dan. Neg. Inst. 697, section 847; Tiedeman Com. Paper, section 285; *Walker v. Ebert,* 29 Wis. 194 (9 Am. Rep. 548); *Griffiths v. Kellogg,* 39 Wis. 290 (20 Am. Rep. 48); *Selden v. Myers,* 61 U. S. 20, How. 506, 15 L. ed. 976.

While the purchaser of a promissory note is not bound to inquire into its consideration, he is affected by the status of the maker, as in case of a married woman or minor.

*Moore v. Hershey,* 90 Pa. 196.

A holder of negotiable paper, acquired before dishonor, is not protected against defenses that makes void the instrument.

*Caulkins v. Whisler,* 29 Iowa, 496 (4 Am. Rep. 236).

A mortgage procured through fraud is void and a court of equity may decree that it be given up and canceled on the ground that it was so procured.

Boone, Mortg. section 82; *Whitney v. Snyder,* 2 Lans. 477; *Chapman v Rose,* 56 N. Y. 137 (15 Am. Rep. 401); *Fenton v. Robinson,* 4 Hun. 252; *McCormack v. Molburg,* 43 Iowa, 562; *Commercial Bank v. Paddick,* 90 Iowa, 63; *Willard v. Nelson,* 35 Neb. 651.

When it is shown by the defendant that the instrument originated in fraud or in illegality, the burden of proof will be shifted to the holder, and he must then show that he is a *bona fide* holder for value.

Dan. Neg. Inst. 626, section 142; *Bank of Monroe v. Anderson Bros. Min. & R. Co.,* 65 Iowa, 701; *Galbraith v. McLaughlin,* 91 Iowa, 399; *Fayette County Sav. Bank v. Steffes,* 54 Iowa, 214; *Whitney v. Snyder,* 2 Lans. 577; *Griffiths v. Kellogg,* 39 Wis. 290 (20 Am. Rep. 48); *Gibbs v. Linabury,* 22 Mich. 492 (7 Am. Rep. 675); *Anderson v. Walter,* 34 Mich. 113; *Palmer v. Largent,* 5 Neb. 223 (25 Am. Rep. 479); *Day v. Lown,* 51 Iowa, 367; Perry Tr. 226; *First*

*Nat. Bank v. Zeim,* 93 Iowa, 140; *Culbertson v. Nelson,* 93 Iowa, 187, 27 L. R. A. 222; *First Nat. Bank v. Wade,* 95 Iowa, ——; *Sharp v. Nelson,* 93 Iowa, 466.

*Binford & Snelling* for appellee.

GRANGER, J.—This action is on a promissory note for one thousand dollars, and to foreclose a mortgage given to secure the same. The note and mortgage were given to one Lena Fuerth, April 1, 1893. The note was assigned by Lena Fuerth to plaintiff, who resides in Massachusetts, about May 5, 1893, for a consideration of nine hundred and fifty dollars. The defendant does not deny that he signed the note and mortgage, but he bases his defense thereto on substantially the following facts: That Joe Fuerth is the husband of Lena Fuerth, and a real estate agent at Marshalltown, Iowa; that he (defendant) was about to sell a piece of land given him by his father, and purchase another piece; that he went to the office of Joe Fuerth, who was acting for the man to whom he was selling, and the sale and the purchase were completed; that, as to the land given him by his father, his father had a lease, or contract, by which defendant was to pay a certain rent therefor, while he remained single; that, to enable defendant to sell the land, the lease, or contract, was released; that afterwards Fuerth suggested that defendant give his father a lease of the land purchased, and a note in lieu of the one released, which defendant agreed to do; that defendant is illiterate, and cannot read writing or printing, and can only write his name; that Fuerth, instead of making the note and lease, wrote the note and mortgage in suit, which defendant signed, thinking them to be the note and lease agreed upon; that he never received anything from Lena Fuerth for said note, and never agreed to make any such note. The purchase of the note in suit was made by William

Andrews, as agent for the plaintiff, and it appears that the plaintiff knew nothing of the note until after it was purchased. The facts as to the fraudulent execution of the note are not in dispute. It may be stated as a fact that, when defendant signed the note and mortgage, he supposed he was signing a lease to his father, and a note for one hundred dollars.

There is something of a hopeless conflict of authorities touching the liability of persons whose names appear to negotiable paper, through fraudulent means, and the paper is in the hands of innocent holders. It would be useless to attempt a reconciliation of them. There are numerous cases in which parties, intending to sign a contract, have, through fraudulent misrepresentation, placed their signatures to negotiable instruments, which have fallen into the hands of innocent purchasers. There is a very respectable line of authorities holding that, in the absence of negligence, the maker of such an instrument is protected. *Whitney v. Snyder*, 2 Lans. (N. Y.) 477; *Walker v. Ebert*, 29 Wis. 196; *Anderson v. Walter*, 34 Mich. 113; *Bank v. Lierman*, 5 Neb. 247; *Puffer v. Smith*, 57 Ill. 527. See, as bearing somewhat on the question, *Bank v. Zeims*, 93 Iowa, 140 (61 N. W. Rep. 483). This case is thought to be distinguishable from those because of the fact that in this there was an intent to give a promissory note. In this respect, also, there is something of a conflict of authority, but it is not so marked. The rule is many times stated that there is a distinction between cases in which a party, through fraudulent misrepresentations, signs an instrument which he intends to be a negotiable promissory note, and where, through such misrepresentation, he signs what he does not intend to be such an instrument; and much is claimed in this case because defendant intended to give a note. See *Whitney v. Snyder, supra.* The case of *Douglass v. Matting*, 29 Iowa, 498, is cited

by appellee as explanatory of *Chapman v. Rose*, 56 N. Y. 137. The latter case announces the rule that before one whose name is fraudulently obtained to a note, upon misrepresentations that the instrument is something else, can be held, it must appear that it was not the result of negligence on the part of the signer. It will be well to notice in this connection that in *Douglass v. Matting* the rule of the case is announced on the theory of the culpable carelessness of the maker of the instrument. It is there said: "Now, it would be manifestly unjust to permit the maker, while admitting the genuineness of his signature, to defeat the note, on the ground that, through his own culpable carelessness while dealing with a stranger, he signed the note without reading it, or attempting to ascertain its true contents." *Hopkins v. Insurance Co.*, 57 Iowa, 203 (10 N. W. Rep. 605), is a case between the parties to a note, as was also *McCormack v. Molburg*, 43 Iowa, 561, and hence they are not as directly in point as other cases. In *Bank v. Steffes*, 54 Iowa, 214 (6 N. W. Rep. 267), a note was given for a greater amount than agreed upon, through a fraud of the payee, and it was assigned before maturity. The issues did not involve the question of negligence in its execution. It is there said that it was incumbent on the maker to show freedom from negligence. It is then said that it is not certain that he could be allowed to set up fraud as against the plaintiff (an innocent holder), even by showing that he was free from negligence. It cites *Whitney v. Snyder, supra,* and, later, cites *Griffiths v. Kellogg*, 39 Wis. 290, in which a note intended to be given for forty-seven dollars and fifty cents, was, by fraud, made to read seventy-six dollars and twenty-five cents. The note passed into the hands of an innocent indorsee. It is said in the opinion that the note "was as little hers as if the transaction between her and the lightning-rod man had not

taken place, and he had forged the note. If not forgery, it was akin to forgery." The liability of the maker was made to turn, when the fraud was established, on the fact of her negligence in placing her name to the paper. The case copies from *Chipman v. Tucker*, 38 Wis. 43, as follows: "The inquiry in such cases goes back to the questions of negotiability, or of the transfer of the supposed paper to a purchaser for value, before maturity, and without notice, challenges the origin or existence of the paper itself, and the proposition to show that it is not in fact, or in law, what it purports to be, namely, the promissory note of the proposed maker."

The facts of this case come within the rule of the Wisconsin cases, and do not contravene any rule announced in our own state. The defendant was an illiterate man, who could not read nor write, except that he could barely write his own name. He had no contractual relations whatever with Fuerth or his wife. There was nothing to put him on his guard against fraud being practiced upon him. The note and mortgage that he gave, he had never contemplated in any way, and the doing of such a thing was as foreign to his purpose as if he had merely intended to lease or contract to his father without any note. It seems that the papers were prepared in the absence of defendant. In his testimony, he says, speaking of Fuerth: "I met him on the street one day, and he said to me, 'The lease is already drawn up, and all you have to do is to sign it.' I went into the office with him, and asked him to read it. He said he was in a hurry, and wanted to go to dinner, and had some other business to attend to after dinner. I asked him if it was just a straight lease to my father for so much rent, and he said; 'Yes, it is. You can rely on my honor and word for it.' I then asked him to read it, and he said it was no need. I signed what he called

a note and lease." This is in no way contradicted, and we are warranted in accepting it as truth. It is not denied in argument. There was nothing at that time to awaken suspicion as to Fuerth, and the case is peculiar in this: that, as the business was between defendant and his father, there could be no motive for Fuerth to make the papers in any way except as agreed upon. In most of the cases where negligence is considered, the party relieved has had an adverse interest, because of which one might the more readily anticipate that advantage would be taken. This was a case remarkably free from reason for, or grounds of suspicion. What was really done would not have been anticipated by any discreet person. In fact, the situation was such as to disarm one of suspicion, because of Fuerth's absolute want of interest in the business to be done. We think the case is free from negligence on the part of defendant. This being so, he comes within the rule by which a party may be protected. It is to be remembered that the rule we apply is not the usual one in which innocent holders of negotiable papers are protected against fraud in the inception of a note. In such cases there is a note, but the *bona fides* of it is questioned. In this case the note has never existed in the sense of the minds of the parties meeting to give it validity, and there is no negligence to render the defendant liable on other grounds. In *Trambly v. Ricard*, 130 Mass. 259, it is said: "A party who is ignorant of the contents of a written instrument, from inability to read, who signs it without intending to, and who is chargeable with no negligence in not ascertaining the character of it, is no more bound by it than if it was a forgery. There has been no intelligent assent to its terms," etc. The case cites *Selden v. Myers*, 20 How. 506, and *Walker v. Ebert*, 29 Wis. 194. Under these authorities,—and they have strong support,—we think

the defendant is not liable on the note, because he was never a party to such a contract, and he has been guilty of no negligence by which the plaintiff has been misled. He has violated no legal obligation, because of which another is injured. The plaintiff's petition should be dismissed.—Reversed.

---

Note.—*Fraud in obtaining the execution of a note as a defense against a bona fide holder.*

The general rule is that fraud in the contract, or in the consideration out of which the note arose, is no defense in favor of the maker against a *bona fide* holder. *Culver v. Hide & L. Bank*, 78 Ill. 625; *Hayden v. Olinger*, 5 Ill. App. 633; *Wood v. Waters*, 1 Litt (Ky ) 177 13 Am. Dec. 228; *Farrell v. Lovett*, 68 Me. 326 (28 Am. Rep. 59); *Winstead v. Davis*, 40 Miss. 785: *Stedman v. Rochester Loan & Bkg. Co.*, 42 Neb 641; *Perkins v. Challis*, 1 N. H. 254; *Heist v. Hart*, 73 Pa. 286; *Second Nat. Bank v. Morgan*, 165 Pa. 199; *Mackey v. Richardson*, 2 W. N. C. 226; *Powers v. Ball*, 27 Vt 662; *Latham v. Smith*, 45 Ill. 25; *Taylor v. Cribb* (Ga.) (26 S. E. Rep. 468); *Clark v. Tanner* (Ky.) (38 S. W. Rep. 11); *Grooms v. Olliff*, 93 Ga. 789.

Nor is fraud in the procuring of the note or the signature to it. *Ross v. Webster*, 63 Conn. 68; *Bush v. Peckard*, 3 Harr. (Del.) 385; *McCarty v. Lockwood*, 6 Houst. (Del.) 451; *Woollen v. Vankirk*, 61 Ind. 497; *Stein v. Keeler*, 4 G. Greene, 86; *Sully v. Goldsmith*, 32 Iowa, 397; *MacRitchie v. Johnson*, 49 Kan. 323; *Fletcher v. Gushee*, 32 Me. 587; *Wait v. Chandler*, 63 Me. 257; *Roberts v Lane*, 64 Me. 108 (18 Am. Rep. 242); *Hobart v Penny*, 70 Me. 248; *Burrill v. Parsons*, 71 Me. 282; *Crampton v. Perkins*, 65 Md. 22; *Thurston v. M'Kown*, 6 Mass. 428; *Fisher v. Leland*, 4 Cush. 456, 50 Am. Dec. 805; *Smith v. Livingston*, 111 Mass. 342; *Kelly v. Smith*, 1 Met. (Ky.) 316; *Spencer v. Biggs*, 2 Met. (Ky.) 125; *Wright v. Irwin*, 33 Mich. 32; *Mace v. Kennedy*, 68 Mich 389; *Corby v. Butler*, 55 Mo. 398; *Emmert v. Meyer*, 65 Mo. App. 609; *Paige v. Chapman*, 58 N. H. 333; *Callahan v Bancroft*, 28 Hun. 584; *Allen v. McFadden*, 48 N. Y. S. R. 88; *Craig v, Sibbett*, 15 Pa. 238; *Vathir v. Zane*, 6 Gratt. 246; *Hereth v. Merchants' Nat. Bank*, 34 Ind. 380; *Riley v. Schawacker*, 50 Ind. 592; *Brickley v. Edwards*, 131 Ind. 3; *Second · at. Bank v. Hewitt*, 59 N. J. L. 57; *Hamilton v. Vought*, 34 N. J. L. 187; *Rothermal v. Hughes*, 134 Pa. 510.

To assure credit and circulation of bills of exchange·as a species of useful currency, the law merchant in most cases, forbids a party to such bills, when sued by a *bona fide* holder for a valuable consideration without notice, to plead fraud as between himself and the party with whom he contracted, as a defense. *Bement v. McClaren*, 1 B. Mon. 298.

Fraud in obtaining the issuance of bonds, which are made negotiable instruments, will not affect them in the hands of a *bona fide* holder for value. *State, Plock, v. Cobb*, 64 Ala. 127.

That there was fraud in the transaction out of which the note arose, is no defense to an action upon it by a *bona fide* holder. *Swift v. Tyson*, 41 U. S. 16 Pet. 1, 10 L. ed. 865.

That an acceptance is obtained by means of a forged bill of lading, is no defense to an action upon it by a *bona fide* holder. *Robinson v. Reynolds*, 1 Gale and D. 526.

And that ruling was affirmed in *Robinson v. Reynolds*, 2 Q. B. 196.

A *bona fide* holder is not affected by fraud in obtaining the note. *Barney v. Earle*, 13 Ala. 106.

One who purchases for value, a note which had been produced by fraud, may recover upon it, unless he purchased with actual notice of the defects in title or in bad faith. *King v. Doane*, 139 U. S. 166, 35 L. ed. 84.

In *Harvey v. Towers*, 6 Exch. 656, 20 L. J. Exch. N. S. 318, 15 Jur. 544, the court, for the purpose of deciding the question of burden of proof, states that notwithstanding

the bill may have been concocted by fraud, that is no defense, unless the holder obtained it without value.

The defense of fraud cannot be made against a *bona fide* indorsee for a valuable consideration, before the note is due. *Slacom v. Wishart*, 3 McLean, 517.

In *Brown v. Spofford*, 95 U. S. 474, 24 L. ed. 508, the court says: "Whatever may have occurred between other parties to the instrument, if not fraudulent in its inception, the holder of the same, if he acquired it for value, in the usual course of business, before maturity, cannot be affected by any such transactions."

In *Mitchell v. Hackett*, 14 Cal. 666, it is stated, that if a note, which has been procured by fraudulent misrepresentations, was negotiable within the protection of the law merchant, the negotiation of it would bind the maker to pay it.

In *Middletown Bank v. Jerome*, 18 Conn. 449, where the defense was, that the note was fraudulently obtained by the payee, the court says the objection by defendant amounted only to this, that there was no consideration between the original parties to the note, which is no objection at all, against *bona fide* indorsees.

It is no defense, that the note was procured by false representations. *Strough v. Gear*, 48 Ind. 100.

Fraud in the consideration,—for example, procuring a note for supplies to be furnished, and applying it upon past due indebtedness,—is not a defense against the note in the hands of a *bona fide* holder. *Taylor v. Bowles*, 28 La. Ann. 295.

A note, fraudulent in its inception, will not be adjuged void on grounds of public policy, after it has reached the hands of a *bona fide* holder, for value. *McDonald v. Johnson*, 46 N. Y. S. R. 838.

In *Watson v. Russell*, 3 Best & S. 34, 31 L. J. Q. B. N. S. 304, 9 Jur. N. S. 249, 7 L. T. N. S. 528, it is said, that if a note is procured by means of a false pretense, and is transferred to a *bona fide* holder, the maker will be liable thereon. It imports value and liability *prima facie*, and the maker can only relieve himself of liability, by showing that the holder did not pay value, or did not take the instrument *bona fide.*

In *Hatch v. Barrett*, 34 Kan. 236, the reason of the rule is said to be, that to some extent both parties are in fault, and that neither should be allowed to take advantage of his own wrong, as against an innocent party.

### *No relief in equity.*

This is one of the few cases where the defrauded party will not be afforded relief by a court of equity.

An injunction will not lie to restrain proceedings at law upon a note in the hands of a *bona fide* holder, on the ground that it was obtained from the maker by fraudulent representations. *Daugherty v. Scudder*, 17 N. J. Eq. 248.

Equity will not compel an indorsee for value of a bill of exchange to deliver it up, although the acceptance was given on the faith of a bill of lading, which proved to be forged. *Thiedemann v. Goldschmidt*, 1 De G. F. and J. 4, 1 L. T. N. S. 50 (8 Week Rep. 14.)

### *Exception where maker was misled as to character of paper.*

There is a very general tendency on the part of the courts to recognize an exception to the rule where, without negligence on the part of the maker, his signature is obtained to a note, when he supposed that he was signing an instrument of an entirely different character.

This exception originated in England, in the case of *Foster v. Mackinnon*, L. R. 4 C. P. 704, 38 L. J. C. P. N. S. 310, 20 L. T. N. S. 887 (17 Week. Rep. 1105), which was an action against an indorser of a bill of exchange, and the defense was that the endorsement was obtained by a fraudulent representation that the paper was a guaranty. The court held that the indorser was not liable if the signature was obtained by such fraudulent representation, and the defendant was guilty of no negligence. The court says: "It seems plain on principle, and on authority, that if a blind man, or a man who cannot read, or who for some reason (not implying negligence) forbears to read, has a written contract falsely read over to him, the reader misreading to such a degree that the written contract is of a nature altogether different from the contract

pretended to be read from the paper, which" he "signs,—then, at least if there be no negligence, the signature so obtained is of no force."

This doctrine has received very great favor among the courts of this country, although, as will appear, it has been repudiated by some of them.

If, without negligence on his part, a person signs what he supposes to be a contract, but which afterward turns out to be a note, being actuated by the fraud of the payee, he will not be liable upon the note in the hands of a *bona fide* holder for value. *Gibbs v. Linabury*, 22 Mich. 479 (7 Am. Rep. 675). The court says: "When a party never designed to put, or cause to be put, any sort of negotiable paper in circulation, when the thought of doing so never entered his mind, when he has never bargained to do so, when he has never consciously been privy to any attempt to set such paper afloat, how can it be said that his will in any way way assented to the concoction of such a contract, so as to make him an object of the rule?" that when one of two innocent parties must suffer, the loss must fall upon the one who enabled the third person to occasion it.

In *Briggs v. Ewart*, 51 Mo. 245 (11 Am. Rep. 445), which was the case of a person signing a note, when he supposed it was an order for a patented article, for the sale of which he was appointed agent, the court says: "It may be assumed as an axiom, too well settled to be disputed, that no one can be made a party to a contract without his own consent. Although his signature may be put to the writing, and may have been written by himself, yet, if he did not know what he was signing, but acted honestly, under the belief that he was signing some other paper, * * * he ought not to be bound by such signature. * * * Commercial paper is no exception to this rule, only that in some cases a party knowingly putting his name to such paper may, by his own negligence, be estopped from disputing its execution as against an innocent holder for value."

And that case was followed in *Martin v. Smylee*, 55 Mo. 577; *Corby v. Weddle*, 57 Mo. 452.

Signing a paper which a person has no reason to suppose is a note, and where he is in no fault for his ignorance, is no execution. The instrument thus palmed off on him is a forgery, and not a genuine instrument. It would do more harm than good to compel all persons who sign papers to trust to their own reading, which in many cases would be impracticable. *First National Bank v. Deal*, 55 Mich. 592. In that case, what the maker thought he was signing was an application for insurance, but it turned out to be a note for $130.

If the maker had no intention of signing the paper he did, but supposed it was something else, he will not be liable. *Detwiler v. Bish*, 44 Ind. 70.

Where the maker supposed he was signing his name to a blank piece of paper, to enable the payee to see how his name was spelled, and it proved that through the payee's fraud the signature was to a note, the court says there was no more liability on the maker than though there was a total forgery. *Cline v. Guthrie*, 42 Ind. 227 (13 Am. Rep. 357).

Where the maker of the note was sick and enfeebled in body and mind, and his eyesight so poor that he could not see without his glasses, which he had lost, all of which he told the payee, who upon his request pretended to read the paper to him, but who did so incorrectly, and there was no one near to whom application could be made for assistance, it was held that there was no negligence in signing the paper, and that no recovery could be had on the note by a *bona fide* holder. *Webb v. Corbin*, 78 Ind. 403.

Where the maker, who was sick and infirm, was given a strong medicine by the payee, which benumbed his faculties so that he did not know what he was doing, and then signed what was represented to him as a contract, but which proved to be a note, it was held that he was not guilty of negligence which would preclude his defense of fraud. *Mitchell v. Tomlinson*, 91 Ind. 167.

If the maker did not intend to sign or deliver the note, a *bona fide* holder cannot recover on it. *Kagel v. Totten*, 59 Md. 447.

One who has been tricked into signing a promissory note, will not be liable upon it, unless he was guilty of gross negligence. *Soper v. Peck*, 51 Mich. 563.

If the signature of an illiterate person is obtained to a promissory note, by fraudulently inducing him to believe that he is signing a different instrument, with

no fault on his part, such note will be void in the hands of a *bona fide* holder. *First Nat. Bank v. Lierman*, 5 Neb. 247.

A note procured from a person unable to read or write, by representing that it was an instrument of a different character, cannot be collected by a *bona fide* holder, if the maker was not negligent in executing it. *Willard v. Nelson*, 35 Neb. 651.

If the maker is induced to sign a note, which he thinks is an instrument of another nature, and is not guilty of negligence, he will not be liable. *Whitney v. Snyder*, 2 Lans. 477; *Head v. Smith*, 44 How. Pr. 476.

If the maker was guilty of no negligence, and was induced to sign the note by fraud, artifice, or deception, as to the nature of the instrument, a *bona fide* indorsee of it cannot enforce it. *National Exch. Bank v. Veneman*, 43 Hun. 241.

The maker is not liable if his signature was procured by fraudulent representations as to the character of the paper, and he was not guilty of negligence. *De Camp v. Hamma*, 29 Ohio St. 467.

Where the maker could not read or write, and the note was represented to him as of a different character, it was held void in the hands of a *bona fide* holder for value. *Walker v. Ebert*, 29 Wis. 194 (9 Am. Rep. 548). The court says: "Negotiability * * * pre-supposes the existence of the instrument as having been made by the party whose name is subscribed; for, until it has been so made, and has such actual legal existence, it is absurd to talk about a negotiation, or transfer, or *bona fide* holder of it, within the meaning of the law merchant."

And that case was followed in *Kellogg v. Steiner*, 29 Wis. 626, and *Butler v. Carns*, 37 Wis. 61.

It will be noted from the language used in the above cases, that they do not entirely agree as to the exact limits to which the exception should be carried, and this lack of agreement will become more apparent when the cases are considered. in which the exception is held not to apply.

In addition to the lack of agreement, some of the courts have refused absolutely or apparently, to recognize the exception at all.

Thus, in *First Nat. Bank v. Johns*, 22 W. Va. 520 (46 Am. Rep. 506), it is held that the question of negligence of the maker is not a proper subject for inquiry. "If the party signed the note, if it was his genuine signature, and he intended to sign a paper, and by artifice and fraud was induced to sign a paper he did not intend to sign, and did in fact sign a negotiable promissory note, which was afterwards purchased for value before maturity, without notice of any such fraud in its procurement, he is bound to such innocent holder."

The fact that the note is procured from a person who is unable to read, by fraudulent representations as to the character of the paper, will not render it void in the hands of a *bona fide* holder. *Highsmith v. Martin* (Ga.) 24 S. E. Rep. 865.

In *Phelan v Moss*, 67 Pa. 59 (5 Am. Rep. 402), it seems to have been regarded as no defense to the note that the signature was procured from the maker when he thought that he was signing some other kind of instrument.

That the signature of the note was procured by making the maker believe that he was signing an agreement to pay interest on the cost of an insurance policy which he was to receive, will not avoid the note in the hands of a *bona fide* holder. *Battles v. Laudenslager*, 84 Pa. 446.

A person induced by fraudulent representations to execute a note, is liable thereon to a *bona fide* holder, although he misunderstood its legal effect. *Rowland v. Fowler*, 47 Conn. 347. In that case the trial court had charged the jury that if defendant was induced to put his name to a paper which he did not understand to be a note, and by a trick was made to believe it was not a note, but an instrument of an entirely different character, he will not be liable, and the note will not be regarded as his note; and the court held that this language may have misled the jury, and ordered a new trial.

That the signatures were procured by fraud, even to the extent that the makers did not know that they were signing a note, will be no defense. *Loomis v. Metcalf*, 30 Iowa, 382.

Although the Iowa court indicates in the above decision that it will hold a strict doctrine upon this subject, yet it seems not entirely averse to recognizing the

exception. For in *Green v. Wilkie* it held that if the maker cannot read or write, and goes to a neutral person for the purpose of executing the paper, and such person subtitutes a negotiable paper for the paper to be executed, the maker will not be guilty of negligence so as to render himself liable upon the substituted note, when it has reached the hands of a *bona fide* holder, since he had no reason to be on his guard against the person whom he supposed was neutral.

## The maker must not be guilty of negligence.

One of the elements necessary to bring a case within the exception is absence of negligence on the part of the maker.

If the maker was negligent in not ascertaining the character of the paper before signing it, he will not be permitted to defend against it. *Citizens National Bank v. Smith*, 55 N. H. 593.

If a person negligently signs and delivers to another, a printed form of a negotiable promissory note containing blanks, without knowing it to be such, he will be estopped as against a subsequent *bona fide* holder from denying his liability. *Ross v. Doland*, 29 Ohio, 473.

It is not sufficient to relieve the maker from liability that he should have used the diligence and care that a man of ordinary care and prudence would have used under similar circumstances, but he must not have been guilty of any negligence in signing the paper. *Dinsmore v. Stimbert*, 12 Neb. 433.

## What is negligence?

When the question is asked, What is negligence? the cases do not fully agree in their answer. The circumstances are generally sufficiently different to account for part of the difference in ruling. But all the difference cannot be accounted for in this way. There is substantial agreement that signing the paper without attempting to learn its contents will be negligence.

Failure to read the paper when able to do so, is negligence, which will prevent the one signing it from making the defense that it was procured by fraud. *Chapman v. Rose*, 56 N. Y. 137 (15 Am. Rep. 401), Reversing 44 How. Pr. 364.

If being able to read, the maker signs the note without reading it, he will not be permitted to defend against a *bona fide* holder. *Ward v. Johnson*, 51 Minn. 480.

If a person signs the paper voluntarily, while under no controlling necessity to sign, without taking time to inform himself of its character, but relies on the opposite party to the contract for information respecting it, he misplaces his confidence, and will not be heard to say that he was in consequence misled to sign, so as to take himself out of the general rule governing commercial paper. *Mackey v. Peterson*, 29 Minn. 298 (43 Am. Rep. 211.)

Although the maker is not able to read or write, yet if he signs the paper without any attempt to learn its contents, he will be guilty of negligence, which will preclude his defense of fraud. *Fisher v. Von Behren*, 70 Ind. 19 (36 Am. Rep. 162.)

In *Woollen v. Whitacre*, 73 Ind. 201, it was alleged that the contract, as it read, on its face, was simply an appointment of agency, for the sale of a patented article, but that by mutilating the paper, a note could be cut out of it; and the court held, that these facts constituted no defense to the action.

If the maker, who is unable to read or write, signs the note without asking his son, who was present and who could read, to read it to him, he will be liable on the note, because of his negligence, although the character of it was fraudulently misrepresented to him. *Williams v. Stoll*, 79 Ind. 80 (41 Am. Rep. 604).

If the maker signs, without reading, although able to do so, he will be liable. *Winchell v. Crider*, 29 Ohio St. 480.

In *Douglass v. Matting*, 29 Iowa, 498 (4 Am. Rep. 238), where the maker signed a note, believing it to be a contract for service, the court said that, "it is conceded that if the transaction * * * [which resulted] in procuring the signature, * * * amounted to less than a forgery, the defense is not sufficient, as against the *bona fide* holder, receiving it for value, before due. The court then decides that the instrument was not a forgery, and that defendant voluntarily signed it, although under a mistake, as to its character, and then proceeds: "As between the *bona fide* holder,

receiving the paper before due, for value, and the maker, the equities are all on the side of the first. The maker puts his genuine signature to a note, appearing upon its face fair and regular. * * * Now, it would be manifestly unjust to permit the maker, while admitting the genuineness of his signature, to defeat the note on the ground that through his own culpable carelessness, while dealing with a stranger, he signed the instrument without reading it, or attempting to ascertain its true contents. * * * The maker had it in his power to protect himself from the fraud, but failed to do so."

In *Shirts v. Overjohn*, 60 Mo. 305, the court says: "If it appears that the party sought to be charged, intended to bind himself by some obligation in writing, and voluntarily signed his name to what he supposed to be the obligation he intended to execute, having full and unrestricted means of ascertaining for himself the true character of such instrument before signing the same, but by his failure to inform himself of its contents, or by relying upon the representations of another as to the contents of the instrument presented for his signature, signed and delivered a negotiable note in lieu of the instrument intended to be signed, he cannot be heard to impeach its validity in the hands of a *bona fide* holder." In that case, whatever observations there are in *Briggs v. Ewart*, 51 Mo. 245, 11 Am. Rep. 445; *Martin v. Smylee*, 55 Mo. 577; and *Corby v. Weddle*, 57 Mo. 452; which are contrary to the doctrine so enunciated, are disapproved.

And that case was followed in *Frederick v. Clemens*, 60 Mo. 313; *Cannon v. Moore*, 17 Mo. App. 92; *First Nat. Bank v. Stanley*, 46 Mo. App. 440.

Upon the question of how far relying on the representations of the other party as to the contents of the paper is negligence, there is less accord, although the great weight of authority holds that such conduct is negligent.

In *Anderson v. Walter*, 34 Mich. 113, it was said that where a party to an instrument undertakes to read it over, in the presence of the other party, in order that the latter may understand its contents before signing it, the party reading is legally and morally bound to read it correctly, and the other interested party has a right to rely upon its contents being so read, and need not examine it himself. Ordinarily, no negligence can be attributed to a person, who signs papers after hearing them compared, without further examination.

But in *Farmers & M. Bank v. Butler*, 48 Mich. 192; *Gibbs v. Linabury*, 22 Mich. 479 (7 Am. Rep. 675), and *Anderson v. Walter*, 34 Mich. 113, are explained by saying that the paper was no more the makers' than if their signatures had been forged on it.

In an Indiana case it was held that a man who cannot read must necessarily repose confidence in those with whom he deals, and if they falsely read the instrument to him he is not deemed to be negligent, simply from the fact that he trusts them, and signs the paper upon the information thus furnished. It may be that he will be negligent in not having the paper read to him by one whom he knows to be disinterested, but whether he does so or not is generally a question for the jury. *Baldwin v. Bricker*, 86 Ind. 221.

But in an earlier case it had been stated, that if one sign a note, whether he can read or not, relying upon the representations of the payee as to its contents, without making any effort to ascertain its tenor, he will be liable on it to a *bona fide* holder. *Ruddell v. Dillman*, 73 Ind. 518, 37 Am. Rep. 152.

Most of the case, however, holds that a person who can read trusts to the representations of, or reading of the paper by, a stranger, he will be guilty of negligence, which will preclude his making the defense. *Nebeker v. Cutsinger*, 48 Ind, 436; *Moon v. Vancuren*, 49 Ind. 201; *Glenn v. Porter*, 49 Ind. 500; *Kimble v. Christie*, 55 Ind. 140; *Woollen v. Ulrich*, 64 Ind. 120; *Maxwell v. Morehart*, 66 Ind. 301; *Thomas v. Ruddell*, 66 Ind. 326; *First Nat. Bank v. Lotton*, 67 Ind. 256; *Bremmerman v. Jennings*, 61 Ind. 334; *Indiana Nat. Bank v. Weckerly*, 67 Ind. 345; *Ruddell v. Phalor*, 72 Ind. 533 (37 Am. Rep. 177); *Baldwin v. Barrows*, 86 Ind. 351.

One who having opportunity and power to ascertain with certainty, the exact obligation he is assuming, relies upon statements of another person with whom he is dealing, and executes a promissory note without reading it, will be liable thereon to a *bona fide* holder. *Carey v. Miller*, 25 Hun. 28.

If the maker read a portion of the paper offered for signature, and relied on the representations of the stranger as to the character of the others, he will not be heard to impeach the validity of the note which was among them, when it has reached the hands of a *bona fide* holder.  *Cowgill v. Petifish*, 51 Mo. App. 264.

One is guilty of negligence as matter of law if, possessed of all his faculties and able to read, he signs a note, relying upon the assurance or reading of a stranger that it is a different instrument.  *Ort v. Fowler*, 31 Kan. 478 (47 Am. Rep. 501).

If the maker voluntarily signs the paper supposing it to be some other contract, relying on the representations of the payee, without examining it sufficiently to ascertain its character for himself, he will not be permitted to set up fraud as against a *bona fide* holder.  *Kellogg v. Curtis*, 65 Me. 59.

And one case holds that the signing of a note by one who cannot read, upon the representation of a stranger that it is not a promise for the payment of money, but a mere agency contract, is such carelessness that the maker cannot defend against the note in the hands of a *bona fide* holder.  *Bedell v. Herring*, 77 Cal. 572.  The court says "that to apply to such an instrument the principles which establish the essentials of an ordinary contract as between the original parties,—as, for instance, that there must be consent of the parties and a sufficient consideration; that where there was no intention to sign there was, in law, no signature; that fraud vitiates a contract *ab initio*, etc.,—would be to undermine the whole structure of commercial law, and 'shake paper credit to its foundation.'"

## Intention to Sign Note.

Some of the courts make a distinction between cases in which the maker intended to sign a note, and those in which he had no such intention, holding that in the former cases he would not be heard to complain that the note was for a greater amount than he thought it was.

If the note is intentionally signed, the fact that by fraud it is for an amount larger than was intended, will not affect it in the hands of a *bona fide* holder for value.  *Merritt v. Bagwell*, 70 Ga. 578.

If the maker of a note has intentionally issued it, he cannot defend it in the hands of a *bona fide* holder for value because of fraud in the procuring of it.  *Wildsmith v. Tracy*, 80 Ala. 258.

The mere fact that the maker is unable to read will not enable her to defeat a recovery on a note for a larger amount than she supposed the note called for, if she knowingly signed the note and neglected to go or send one quarter of a mile to a neighbor to ascertain the exact nature of the contract.  *Yeagley v. Webb*, 86 Ind. 424.

One who executes a promissory note, knowing it to be such, cannot set up fraud of the payee as a defense to the note in the hands of a *bona fide* holder, without showing that he was free from negligence in its execution.  *Fayette County Sav. Bank v. Steffes*, 54 Iowa, 214.

But in Wisconsin it is held that if the note is procured under pretense of getting the maker to sign a note for a less sum, it is not his note, and he will not be liable upon it to a *bona fide* holder.  *Griffiths v. Kellogg*, 39 Wis. 290 (20 Am. Rep. 48); *Bowers v. Thomas*, 62 Wis. 480.

## Rule Not Applicable to Non-Commercial Paper.

The rule that negligence will defeat the defense, is not applicable to non-commercial paper.  *Kastner v. Pibilinski*, 96 Ind. 229.

The rule precluding the defense does not apply to non-negotiable notes.  *Wickham v. Grant*, 28 Kan. 517.

## General Rule Applicable to Sureties.

The maker's fraud in procuring the signature of the surety will be no defense to the latter if the payee was innocent.  *Craig v. Hobbs*, 44 Ind. 363.

The fact that a surety signs without reading the note, under a misrepresentation by the maker as to its character, will be no defense to him in the hands of a *bona fide* holder.  *Wright v. Flint*, 33 Iowa, 159.

That an indorsement is procured by fraudulent representations is no defense to the indorser. *Clothier v. Adriance*, 51 N. Y. 322.

If the maker procures a guaranty by fraudulent representation, the grantor will not be permitted to defend upon that ground against a *bona fide* holder. *Mc Williams v. Mason*, 31 N. Y. 294.

Fraudulent representations to induce an indorsement, are no defense to an action by a *bona fide* holder against the indorser. *Humphrey v. Clark*, 27 Conn. 381.

That the indorsement was procured by the fraud of the maker, is no defense to the indorser. *Kingsland v. Pryor*, 33 Ohio St. 19; *Lancaster County Nat. Bnnk v. Garber*, 178 Pa. 91; *Riley v. Reifert* (Texas Civ. App.) (32 S. W. Rep. 185); *Selser v. Brock*, 3 Ohio St. 302.

If the indorsement was made intentionally, the fact that it was procured by fraud, is no defense against a *bona fide* holder. *Von Windisch v. Klaus*, 46 Conn. 433.

In *Putnam v. Sullivan*, 4 Mass. 45 (3 Am. Rep. Dec. 206), which was the case of an indorser, the court says, "that counsel * * * agree, that generally, an indorsement obtained by fraud, shall hold the indorsers according to the terms of it; but they make a distinction between the cases, where the indorser through fraudulent pretenses has been induced to indorse the note he is called on to pay, and where he never intended to indorse a note of that description, but a different note, and for a different purpose. Perhaps there may be cases in which this distinction ought to prevail, * * * But, * * * an indorser cannot avail himself of this distinction, except in cases where he is not chargeable with any laches or neglect, or misplaced confidence in others."

## Effect of Statutes.

Some of the states have statutes permitting fraud to be set up in defense to a note in the hands of a *bona fide* holder.

But the decisions under those statutes do not seem to be very different from those in states where no statutes exist.

The Georgia Code, which declares that the *bona fide* holder of a note shall be protected from any defense set up by the maker, except fraud in its procurement, means fraud in the procurement of the note by the holder, and not fraud in the procurement of the note as between the original parties, so that the *bona fide* holder may recover upon it, although it was procured by the original payee through fraud. *Robenson v. Vason*, 37 Ga. 66; *Bealle v. Southern Bank*, 57 Ga. 274.

The Minnesota statute, avoiding the note in the hands of a *bona fide* holder, if it was procured by fraud, applies only if the maker did not intend to sign a note, or know that he was doing so. *Yellow Medicine County Bank v. Tagley*, 57 Minn. 391.

Under the Mississippi Code, the maker of a note may set up as against an indorsee, the defense that it was procured from him by fraud. *Robertshaw v. Britton*, (Miss) (21 So. Rep. 523).

The Iowa statute, providing that fraud may be set up against a note in the hands of a *bona fide* holder, does not apply to a note assigned before the statute took effect. *Temple v Hays*. Morris (Iowa), 9.

The Iowa statute was not mentioned again in the decisions from that state, the subsequent decisions all being based upon the general common law governing the subject.

Under the Illinois statute, if the note is procured by fraud and circumvention, and the signer used due diligence when he executed it, the *bona fide* holder will not be permitted to recover upon it. *Glazier v. Streamer*, 57 Ill. 91; *Hewitt v. Jones*, 72 Ill. 218.

Either fraud or circumvention in procuring the signature is sufficient under the Illinois statute. *Hewett v. Johnson*, 72 Ill. 513.

Fraud in the consideration of the note, is not such fraud or circumvention as will defend it in the hands of a *bona fide* holder under the Illinois statute. *Murray v. Beckwith*. 48 Ill. 391.

Stealing the note is not fraud or circumvention within the meaning of the Illinois statute. *Shipley v. Carroll*, 45 Ill. 285; *Clarke v. Johnson*, 54 Ill. 296.

A misrepresentation as to the legal effect of the instrument, as that it would not be operative without a stamp, is not such a fraud in obtaining the note as will avoid it in the hands of a *bona fide* holder. *Latham v. Smith*, 45 Ill. 25.

Fraud in the consideration for the note is no defense, even although the statute provides that if any fraud or circumvention be used in obtaining the making or executing of the instrument, the note shall be void, not only as between maker and payee, but also in the hands of every subsequent holder. *Mulford v. Shepard*, 2 Ill. 583, 33 Am. Dec. 432.

And that case was followed in *Woods v. Hynes*, 2 Ill. 103, and *Taylor v. Thompson*, 3 Ill. App. 109.

If the maker can read with facility, but signs the note without reading it, relying upon the representations of the payee, he will be liable upon it in the hand⌄ of the *bona fide* holder, although it does not contain a condition which he suppos⌄ ⌄t did. *Leach v. Nichols*, 55 Ill. 273.

If the maker is not able to read, except with difficulty, and he requests the payee to read the instrument to him, and the latter reads it so that it appears to be, not a note, but a mere contract, the maker will not be liable to a *bona fide* holder, under the Illinois statute. *Taylor v Atchison*, 54 Ill. 196 (5 Am. Rep. 118).

When at the time of signing the note the maker was busy with a customer, and his attention was purposely diverted from the note, which he was told was not a judgment note, when it was, in fact, such, there was such fraud as avoided it in the hands of a *bona fide* assignee. *Anderson v. Field*. 6 Ill. App. 307.

The exercise of due diligence and attention on the part of the maker to protect himself from fraud, is a necessary element of the defense. *Smith v. Culton*, 5 Ill. App. 422.

Where, after reading the note twice, the signature was attached to what appeared to be a note for ten dollars, but by some trick the actual amount was three hundred dollars, the signature was obtained by fraud or circumvention, within the meaning of the statute. *Auten v. Gruner*, 90 Ill. 300.

Whether or not the maker was guilty of a want of ordinary care, in signing the note without being able to read it, but trusting another man to do so, is for the jury. *Sim v. Pyle*, 84 Ill. 271.

A misrepresentation of the legal effect of the instrument will not avoid it in the hands of a *bona fide* holder, if the maker was, or might have been, acquainted with its language before he signed it. *Homes v. Hale*, 71 I . 552.

If the maker relied upon a stranger to read the note to him, and did not refer to friends, who were present and could read, he will be guilty of negligence which will preclude his defense. *Swannell v. Watson*, 71 Ill. 456; *Muhlke v. Hegerness*, 56 Ill. App. 322.

If the signature is procured under the belief that the paper is of a different character, and the maker is guilty of no negligence, he will not be liable to a *bona fide* holder. *Hubbard v. Rankin*, 71 Ill. 129; *Vanbrunt v. Singley*, 85 Ill. 281.

The person signing the note must use all reasonable means to prevent fraud being practiced upon him. If the maker is prevented from reading the note by the restiveness of his team in the field, he will not, as a matter of law, be guilty of negligence. *Sims v. Bice*, 67 Ill. 88.

A note payable absolutely, the signature to which is procured by artifice when the maker supposed it was payable upon condition, is procured by fraud, within the meaning of the statute. *Munson v. Nichols*, 62 Ill. 111.

If the maker can read, and signs the note supposing a condition is indorsed on the back when it is, in fact, indorsed on another paper, his own negligence will prevent his defending against the note in the hands of a *bona fide* holder. *Mead v. Munson*, 60 Ill. 49

If a person who cannot read English is told that the note is for the sum of five dollars and fifty-five cents, when it is, in fact, fifty dollars and fifty-five cents, it will be obtained by fraud within the meaning of the statute. *Richardson v. Schirtz*, 59 Ill. 313.

The fact that the signature of a surety is procured by fraudulent representations of the maker, will not affect the note in the hands of a *bona fide* holder who was ignorant of the fraud. *Gridley v. Bane*, 57 Ill. 529.

If the signer cannot read much, and signs a paper which is stated to be a contract but in which a note much shorter than the apparent contract is incorporated, so that the signature is attached to the note, he will not be liable to a *bona fide* holder. *Puffer v. Smith*, 57 Ill. 527.

False representation as to what future circumstances might create a liability on the note are not sufficient to show fraud. *Dennis v. Piper*, 21 Ill. App. 169.

That the signature of the surety is procured by fraud will be no defense to him if the payee was not a privy to the fraud. *Anderson v. Warne*, 71 Ill. 20 (22 Am. Rep. 83); *Stoner v. Millikin*, 85 Ill. 218.

### Jury.

The courts have generally undertaken to decide for themselves the question of the presence or absence of negligence, but it has been held that if the maker attempted to read the paper, but could not understand it well, when the payee undertook to read it for him, the question of his negligence is for the jury. *Fenton v. Robinson*, 4 Hun, 252.

### No Delivery.

In one case there was the element of absence of delivery in addition to fraud. The court held that, where an old, infirm, and ignorant person was induced to sign a note by a fraudulent conspiracy, and as soon as it was done the note was snatched up and carried away, there was no delivery which would give it any validity in the hands of any one. *Palmer v. Poor*, 121 Ind. 135, 6 L. R. A. 469.

### Right of Assignee of Bona Fide Holder.

Without attempting to gather all the cases at this place which deal with the question of the rights of the assignee of a *bona fide* holder, for the reason that that question arises in cases where other defenses besides fraud are set up, it may be stated that many cases hold that if the note has been in the hands of a *bona fide* holder it may be transferred by him to one having notice of the fraud or who takes it without paying value free from defenses on the part of the maker. *Masters v. Ibberson*, 8 C. B. 100, 18 L. J. C. B. N. S. 348.

The transferee after the maturity of the note from one who took it *bona fide* before it was due, will not be affected by the fraud in procuring it. *Hogan v. Moore*, 48 Ga. 156; *Eames v. Crosier*, 101 Cal. 260.

The one who takes from a *bona fide* holder may recover, although he himself had notice of equities. *Hereth v. Merchants' Nat. Bank*, 34 Ind. 380.

An assignee of a *bona fide* holder gets a good title, although he knew of infirmities in the paper. *Simon v. Merritt*, 33 Iowa, 537; *Mornyer v. Cooper*, 35 Iowa, 257; *Woodman v. Churchill*, 52 Me. 58; *Cover v. Myers*, 75 Md. 406; *Baseett v. Avery*, 15 Ohio St. 299; *Farmer's & T. Bank v. Lucas*, 26 Ohio, St. 385.

In *Marion County Comrs. v. Clark*, 94 U. S. 278, 24 L. ed. 59, which was a bond case, the court held that if the first indorsee got a good title, his indorsee who acquired the paper before due and for value, would also obtain a good title, although he had knowledge of the equities.

### Amount of Recovery.

The question of amount of recovery also arises in cases where the defense is something besides fraud, so the question cannot be completely treated here. But attention is called to the fact that there is a disagreement between the courts as to the amount which can be recovered. One class of cases holds that the fact that the holder purchased his note at a discount will not prevent his recovery of the full amount due on it. *Lay v. Wissman*, 36 Iowa, 305.

The indorsee may recover the face of the note, and is not limited to the amount which he paid for it. *Bissell v. Dickerson*, 64 Conn. 61,

· While another class holds that the holder can recover only what he paid for the note. *Oppenheimer v. Farmers' & M. Bank*, 97 Tenn. 19, 33 L. R. A. 767; *Holcomb v. Wyckoff*, 35 N. J. L. 35 ⊄0 Am. Rep. 219); *Cardwell v. Hicks*, 37 Barb. 458; *Huff v. Wagner*, 63 Barb. 215; *Harger v. Wilson*, 63 Barb. 237.

Or, to state the rule affirmatively, the indorsee may recover the amount which he actually paid for the note. *Beckhaus v. Commercial Nat. Bank* (Pa.) (11 Cent. Rep. 189).

A person who has paid only part of the price for a note when he receives notice of fraud, is protected to the amount so paid. *Dresser v. Missouri & I. Railway Constr. Co.*, 93 U. S. 98, 23 L. ed. 815.

## Regular Course of Business.

One court has held that the paper must be taken in the regular course of business to entitle the holder to protection. *Roberts v. Hall*, 37 Conn. 210 (9 Am. Rep. 308). And this rule is as applicable in cases of fraud as in other cases of equities between the original parties. But it would seem that in determining what is due course of business, the rules are unnecessarily favorable to the class of persons who usually try to enforce the paper procured by fraudulent device. In most of the above cases where the note was procured by fraudulent misrepresentation as to its character it soon appeared in the hands of one who purchased it from a stranger at a large discount knowing that the maker was good for it, but that in all probability he would have no occasion to do any business which would require a note of that character. With all his knowledge of the circumstances, and knowing the practice to procure such notes fraudulently, and perhaps having had some experience with them himself, it would seem that the law should not look with great favor on his claim. That matter, however, is dependent upon the question, who is a *bona fide* holder? rather than the question of liability of maker to a *bona fide* holder, and is therefore not within the scope of this note. As illustrating the tendency of some of the modern cases, however, attention is called to *Canajoharie Nat. Bank v. Diefendorf*, 123 N. Y. 191 (10 L. R. A. 676), where it was held that the question of *bona fides* was for the jury where a bank cashier purchased from a stranger at a usurious discount, notes of a farmer known to him, who had never engaged in any business requiring the making of such paper, without making any inquiry as to the origin of the notes or equities between the parties.

JAMES TEAGUE, Appellant, v. JOHN FORTSCH, *et al.*

Appeal: CERTIFICATION OF RECORD. Under Code, section 2742, requiring all evidence on appeals in equitable actions, to be certified by the judge, a certificate made by the judge after he has retired from office is insufficient.

SAME. Under Code, section 2742, the certificate must be made by the judge who tried the case, and one made by his successor in office is insufficient.

JUDGE AND CLERK. Code, section 2742, requires all evidence on appeals in equitable actions, to be certified by the judge. Section 3184, provides that, in equitable actions tried upon written testimony, all depositions and papers which were used as evidence, are to be certified, not by transcript, but in the original form. *Held*, that the certificate must be by the judge, notwithstanding the case was tried on written testimony alone; the office of the clerk's certificate, under section 3184, being merely to identify and authenticate the record. *Cross v. Railway Company*, 58 Iowa, 65 (12 N. W. Rep. 71), overruled. *Ruge v. Hahn*, 75 Iowa, 734 (38 N. W. Rep. 389), *followed*.

*Appeal from Fayette District Court.*—HON. W. A. HOYT, Judge.

MONDAY, APRIL 13, 1896.

APPELLEES, Mary H. Teague and Lewis Mohlis, are the administratrix and administrator of the estate of Thomas Teague, deceased, and appellee Fortsch, is the purchaser of the real estate sold by them, as hereinafter stated. Appellant, on September 29, 1891, filed a claim against said estate, which was allowed, on April 7, 1893, in the sum of two thousand, one hundred and seventy-three dollars and fifty-six cents. He also held a claim against said estate, by assignment, in favor of Fred Teague, for one thousand two hundred and forty-five dollars. The deceased, Thomas Teague, left surviving him, his widow, Mary H. Teague, the

administratrix aforesaid, and his daughter, Elizabeth H. Teague, as his only heirs at law. In September, 1892, an order was entered by the district court of Fayette county, Iowa, authorizing said administrator and administratrix to sell all of the real estate left by decedent, except such as had been set off to the widow, for the payment of debts, including those held by plaintiff. Under the order, the real estate might be sold at either public or private sale. Notice of the application for an order for the sale was served only on said widow and daughter of the deceased. The land was duly appraised at three thousand seven hundred and fifteen dollars, and sold to the defendant Fortsch, at private sale, for three thousand seven hundred and twenty-five dollars, and an administrator's deed, in the usual form, executed to him. A report of this sale was made to the court, and the sale and deed duly approved. The proceeds arising from the sale will not pay over sixty per cent. of the amount of the claims filed against the estate. May 11, 1893, plaintiff filed his petition to set aside said sale and deed, as being fraudulent and void, as against the creditors of said estate, and because the consideration was grossly inadequate. The defendants answered, denying all allegations of fraud and allegations that the value of the land was greater than the amount they had sold it for. At the conclusion of the trial, the court dismissed plaintiff's petition, and entered a decree against him for costs.—*Affirmed.*

*J. E. Cook* for appellant.

*Ainsworth, Hobson & Ainsworth* for appellees.

KINNE, J.—I. We first consider appellees' motion to strike the evidence and to dismiss the appeal, or to affirm the decree entered below, because said evidence

has not been certified as required by law. This cause was tried below by the Honorable W. A. Hoyt, then one of the judges of the thirteenth judicial district of Iowa. His term expired on January 1, 1895. December 22, 1894, Judge Hoyt determined said cause, and entered a decree dismissing plaintiff's petition. Within the time provided by law, a certificate was filed in said cause by Judge L. E. Fellows, of said thirteenth district, reciting fully and particularly all of the evidence introduced upon said trial, and identifying the same, from which it appears that the cause was tried upon certain depositions, and other written evidence, and that no oral evidence was introduced upon said trial. Said certificate closes as follows: "All of which papers are now on file with the clerk of the district court of Fayette county, Iowa, as part of the records of said cause; the same being all the evidence offered, or introduced, in said cause, upon the trial thereof, and upon which the decision and decree of the district court was rendered. On strength of certificates and affidavits hereto appended, I sign this certificate. Dated May 13, 1895. L. E. Fellows, Judge of the Thirteenth Judicial District." The certificates and affidavits mentioned by Judge Fellows are as follows: A certificate of the clerk of the district court, dated May 9, 1895, in which he states that this cause was, by order of the court, tried on evidence taken in the form of depositions; that no evidence was offered, or introduced, in the trial of said cause in open court, and that all of the evidence offered, or introduced, in the trial of said cause, is described and identified in the certificate signed by Judge Fellows; and that all of said evidence is now on file in his office, and has been since and before the cause was submitted to the trial judge. W. A. Hoyt certifies, as of the same date, that his term of office as judge of the thirteenth judicial district

expired on January 1, 1895; that said cause was tried, by order of said district court, on written depositions, and no evidence was introduced in open court; that said cause was decided by him on December 22, 1894, and before his term of office expired; and that the evidence embraced in the certificate signed by Judge Fellows, is all of the evidence offered, or introduced, on the trial of said cause, and was duly filed in the office of said clerk before the cause was submitted to him. J. E. Cook, the attorney for plaintiff, swears that the certificate signed by Judge Fellows embraces all of the evidence offered and received in the trial of said cause; that Judge Hobson, one of the present judges of the Thirteenth judicial district of Iowa, was, and is, one of appellees' attorneys, and L. E. Fellows is the other judge of said judicial district. From this state of facts, and the record and evidence, we are to determine whether or not the evidence is legally and properly certified to in this court, so that the cause may be here tried *de novo*. As Judge Hoyt was out of office at the time he made his certificate, it is clear that it is without force and effect. Section 2742, of the Code, requires that the certificate be made by the judge. We have often held that such certificates, made by a judge, after he has retired from office, cannot be considered. *Cross v. Railroad Co.*, 58 Iowa, 65 (12 N. W. Rep. 71); *Educational Inst. v. Coad*, 74 Iowa, 711 (39 N. W. Rep. 94); *Burnett v. Loughridge*, 87 Iowa, 327 (54 N. W. Rep. 238). Neither can the affidavit of the attorney be considered as in any way tending to show a compliance with the statute, as the law nowhere authorizes such an affidavit for the purpose of showing that the evidence was properly certified. It may be conceded that the certificate of Judge Fellows, in form, is in compliance with the requirements of the statute; that is, if he was authorized, under the law, to make such a certificate, it sufficiently

identifies the evidence which was used upon the trial. It is said that this court has never decided that the certificate must be made by the trial judge, and it is insisted that as the statute reads, "certified by the judge," its demands are answered by a certificate made by any judge of the district. In *Educational Inst. v. Coad, supra,* we said that the statute "would seem to contemplate that the certificate must be made by the judge who tried the case." But the question was not expressly ruled in that case. In *Runge v. Hahn,* 75 Iowa, 734 (38 N. W. Rep. 389), it is said that the statute requires the trial judge, in equitable actions, to certify all the evidence introduced upon the trial. We do not think that the requirements of the statute are met or complied with by a certificate made by a successor in office of the judge who tried the case. The purpose of this requirement of the law, as is said in *Runge's Case,* is to "secure such identification of the items of evidence, offered and introduced upon the trial, that no question can fairly arise, upon appeal, as to what the evidence is." How can a judge, who did not try the case, certify, with any degree of certainty, as to what items of evidence were introduced before his predecessor? Take this case, and let it be admitted that all of the evidence was in the form of depositions, or other written evidence, and that it is on file in the clerk's office. Because depositions have been taken in a given case, it does not necessarily follow that they were actually used in the trial of the case. The certificate of Judge Fellows shows that, outside of depositions, sixteen different items of written evidence were introduced upon the trial, consisting of deeds, reports, records of approval of them, claims, and record of their allowance, verdicts, judgments, petitions, notices, bonds, appraisements, and other papers and records. Now, Judge Fellows, so far as this record shows, could have had

no knowledge whatever as to whether any of these depositions, papers, and records were in fact put in evidence, except as he presumed it from their being on the files of the case, or as he obtained it from the certificate of the clerk, or from that of his predecessor. Surely, it would tend to greater certainty, in such cases, to receive and rely upon the certificate of the judge who had tried the case and gone out of office, because he could speak with certainty as to what the evidence adduced before him in fact was, but we have properly held that such a certificate is not to be considered. We think that the law clearly contemplates that the judge who tried the case should make the certificate, and that he must do so while still in office. If a successor of the judge who tried the case may thus certify as to something of which he has no actual knowledge, there is no reason for limiting the right to a successor, for any judge in the state would be equally well qualified. Under the law and the construction which this court has heretofore placed upon it, it works no hardship to require that the manifest intent of the statute be complied with, and the proper certificate be made by the trial judge. We are, therefore, of the opinion that the certificate of Judge Fellows is not in compliance with the statute, and hence cannot be considered. See Acts Nineteenth General Assembly, chapter 35, section 2.